[No. F056749. Fifth Dist. July 30, 2009.]

MANSON, IVER & YORK, Plaintiff and Appellant, v.
PAULA J. BLACK, Defendant and Respondent.

**COUNSEL**

Law Office of Sandra Kuhn McCormack and Sandra Kuhn McCormack for Plaintiff and Appellant.

Paula J. Black, in pro. per., for Defendant and Respondent.

**OPINION**

**HILL, J.**—Manson, Iver & York (Manson), assignee of the original plaintiff (plaintiff), appeals from the order granting the motion of defendant, Paula J. Black, to set aside the default and default judgment against her in this case. Manson contends the trial court abused its discretion because Black's[1] motion was untimely, Black failed to show she was diligent in seeking relief, and Black was properly served with summons and complaint, so there was no violation of due process. We find no abuse of discretion and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

In March 1999, plaintiff Robert Flint filed a personal injury action against Douglas Shinn and "Pamela Black," alleging he was injured in an automobile accident in which Shinn was operating a motor vehicle owned by Pamela Black. Summons and complaint were personally served on *Paula* Black on April 16, 1999. Black failed to file a response and the default of Pamela Black was entered on June 4, 1999. Judgment was entered against Pamela Black in the amount of $15,000 on August 4, 1999.

On May 6, 2005, plaintiff assigned his interest in the judgment to Manson. On July 11, 2005, plaintiff filed an ex parte application to amend the judgment to correct defendant's name, asserting he had discovered her name was not Pamela Black, but Paula Black. The court granted the application and entered the order the same day. The record does not reflect that any notice of this application was given to Paula Black. On October 5, 2005, plaintiff filed applications for a judgment debtor examination of Paula Black and Shinn. On November 3, 2005, both defendants appeared and were examined by Manson's counsel.

---

[1] References to Black without a first name are to Paula Black.

On April 5, 2006, plaintiff filed with the court an assignment of judgment, showing that plaintiff had assigned his interest in the judgment to Manson. Two years later, Manson obtained an ex parte order that all documents in the case should be corrected to reflect defendant's name as Paula J. Black, also known as Paula J. Whittier. Then, on July 6, 2008, Manson filed an ex parte application for an order of sale of a residence owned by Paula Whittier.

On September 17, 2008, Black filed a motion to set aside the default and default judgment against her. She asserted the following facts. In December 1997, her son's van, which was registered in her name, broke down and her ex-husband took it to San Joaquin Automotive, which was owned by Shinn, for repairs. Months later, her ex-husband asked for the van back, but Shinn said it was torn apart and would never be safe to drive again; he wanted $1,900 to put it back together. Black met with the owner of San Joaquin Automotive, whom she did not know by name, signed the van over to him, and sent a release of liability to the Department of Motor Vehicles (DMV). Unknown to her, Shinn had already been in the accident that was the subject of this lawsuit. Black was served with the summons and complaint in 1999, but they did not have her name on them. She assumed she was served in error, and called plaintiff's attorney and told him he had the wrong person. She said she had not been in an accident and did not know Shinn. She thought that ended the matter. When she received the default judgment addressed to Pamela Black, she still assumed plaintiff had the wrong person. In 2005, she was served with the order for judgment debtor examination which correctly named her as Paula Black. She called Manson's attorney and said she did not know anything about Shinn's finances; the attorney told her the examination was of her, and Manson had a default judgment against her. She consulted two attorneys who told her there was nothing she could do. She planned to tell the judge at the judgment debtor examination that the judgment had been in the name of Pamela Black for six years, but she did not get the opportunity.

Manson opposed Black's motion to set aside the judgment, arguing it was untimely and Black did not demonstrate that she acted with reasonable diligence in responding to service of process. On October 21, 2008, the court heard and granted Black's motion, finding that Black's default and the default judgment were "caused by her mistake, surprise, & excusable neglect; and due process requiring the setting aside of the judgment as Ms. Black was never properly served." Manson timely filed this appeal.

## DISCUSSION

■ A default and default judgment may be set aside pursuant to the provisions of Code of Civil Procedure section 473, subdivision (b),[2] but the motion must be made within six months after entry of the default. After the time for requesting statutory relief under section 473 has passed, the court may set aside the default and judgment on equitable grounds. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 [35 Cal.Rptr.2d 669, 884 P.2d 126] (*Rappleyea*).) A judgment that is void on its face may be set aside at any time. (*Nagel v. P & M Distributors, Inc.* (1969) 273 Cal.App.2d 176, 179–180 [78 Cal.Rptr. 65].)

An order vacating a default and default judgment is appealable as an order after final judgment. (*County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 834 [51 Cal.Rptr.2d 73].) An order granting relief from a default and default judgment under the provisions of section 473 is reviewed for abuse of discretion. (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127 [130 Cal.Rptr.2d 517].) An order vacating a default on equitable grounds is also reviewed for abuse of discretion. (*Rappleyea, supra*, 8 Cal.4th at p. 981.)

I. *Motion Under Section 473, Subdivision (b)*

"The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).)

■ The six-month time limit for granting statutory relief is jurisdictional and the court may not consider a motion for relief made after that period has elapsed. (*Stevenson v. Turner* (1979) 94 Cal.App.3d 315, 318 [156 Cal.Rptr. 499].) The six-month period runs from entry of default, not entry of judgment. (*Weiss v. Blumencranc* (1976) 61 Cal.App.3d 536, 541 [131 Cal.Rptr. 298].) The default was entered on June 4, 1999. Black's motion for relief was filed on September 17, 2008. Consequently, to the extent the trial court's order granted statutory relief based on defendant's showing of mistake, inadvertence, surprise or excusable neglect, the motion was untimely and the court was without jurisdiction to make the order.

---

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

## II. *Equitable Relief*

### A. *Void judgment*

■ "The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, subd. (d).) " 'A judgment void on its face may be set aside on motion without any time limitation. [Citations.]' [Citations.]" (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19 [84 Cal.Rptr.2d 715].) It may be set aside on motion of the aggrieved party under section 473 or independent of that section. (*Mechanics Bank of Richmond v. Thole* (1971) 20 Cal.App.3d 884, 886 [98 Cal.Rptr. 82].) " 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' [Citation.]" (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 [29 Cal.Rptr.2d 746].)

■ A trial court lacks jurisdiction to amend a judgment ex parte in a manner not prescribed by statute. In *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228 [79 Cal.Rptr.2d 719] (*Rochin*), the jury returned a special verdict allocating damages among the plaintiff, the defendant, and "others." After conferring with counsel, the court deleted the "others" category from the verdict form and sent the jury back to reallocate damages. The jury returned a verdict allocating damages between the plaintiff and the defendant only. Judgment was entered based on that verdict. Subsequently, without notice to the plaintiff, the defendant submitted to the court a proposed amended judgment that reinstated the jury's original allocation of fault, and the court signed it. After the plaintiff's motion to set aside the amended judgment was denied, he filed an action in equity to set it aside.

The court stated: " 'The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered. However, it may not amend such a judgment to substantially modify it or materially alter the rights of the parties under its authority to correct clerical error. [Citations.]' " (*Rochin, supra,* 67 Cal.App.4th at p. 1237.) For a limited time after judgment is entered, the court retains jurisdiction to alter the judgment pursuant to various statutes, including section 473. But "[d]efendants and the trial court relied on none of the prescribed statutory means to arrive at the amended judgment. [The p]laintiff did not even have the opportunity to appear and argue against the amendment of the judgment." (*Rochin,* at p. 1238, fn. omitted.) The amended judgment was entered outside of the statutorily prescribed means, was not entered to correct a clerical error, and was void and subject to attack at any time. (*Id.* at pp. 1238–1239.)

■ In *Estate of Hultin* (1947) 29 Cal.2d 825 [178 P.2d 756], the timeliness of the filing of the appellant's notice of appeal depended on whether a motion for new trial had been timely filed. The clerk's file stamp on the motion indicated a filing date of June 29, 1945, which made the filing one day late. Judge Blake entered an ex parte order, on motion of the appellants, stating that the filing fee for the motion was paid on June 28, 1945, and the motion was therefore timely. Judge Beardsley, the trial judge, heard the motion for new trial, denied it, and vacated Judge Blake's order. The court noted that a clerical error may be corrected ex parte, without notice and on the court's own motion, where the error appears on the face of the record or the existence of the error is dependent upon the memory and knowledge of the judge. (*Id.* at p. 829.) Where the clerical error does not appear on the face of the record, but must be proved by other evidence, however, "notice of a motion to correct such an error is necessary if substantial rights are involved." (*Id.* at p. 830.) Because the asserted error did not appear on the face of the record and Judge Blake had no personal knowledge of it, and because it affected substantial rights (the timeliness of the new trial motion and the appeal), "notice of a motion to correct the alleged error should be a jurisdictional requirement." (*Ibid.*) A determination whether the clerk made an error in recording the filing date required a factual determination from potentially conflicting evidence. "In such a situation, the right to a notice and hearing is obvious." (*Ibid.*) The court concluded Judge Blake's ex parte order was void on its face. (*Ibid.*)

Thus, unless the amendment merely corrects a clerical error appearing on the face of the record, amendment of a judgment requires notice to all parties whose rights would be substantially affected, a hearing, and presentation of evidence sufficient to make the necessary factual determinations. Where the judgment is amended without notice to a party whose rights are substantially affected by the amendment, the judgment may be set aside. In *McNally v. Mott* (1853) 3 Cal. 235 (*McNally*), the court addressed facts similar to those in the instant case. The court stated:

"The defendant was sued and served by the name of George N. Mott, and making no appearance, judgment was entered against him by the same name. Afterwards, and without notice to the defendant, the plaintiff, on his own motion, obtains an order from the Court to amend the judgment by altering the name of George to Gordon, in which state the judgment now stands.

"It is very evident that the amendment is not sustained by the previous proceedings. The action is against one person and the judgment against another. We have no power to determine, on the application of the plaintiff alone, that George and Gordon are one and the same person. There is no legal proof of that fact in the record, and *prima facie*, two different names must be held to signify two different persons.

"The judgment is reversed, and the cause remanded." (*McNally, supra*, 3 Cal. at pp. 235–236.)

In *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852 [92 Cal.Rptr.3d 717] (*Sakaguchi*), the defendant contended he had not been properly identified in the complaint as a defendant or served with summons and complaint, and therefore the default judgment against him was void, because his first name, Takeshi, was incorrectly spelled "Takechi" in the summons and complaint. The court rejected this argument, observing: " ' "if the service is otherwise properly made, and the person served is aware that he is the person named as a defendant in the erroneous manner, jurisdiction is obtained." ' " (*Id.* at p. 857.) There was only a slight spelling error in the defendant's name, and there was no evidence in the record that the misspelling rendered the defendant unaware he was the person named as the defendant. The court concluded the spelling error did not entitle the defendant to have the judgment set aside. (*Ibid.*)

The judgment was originally entered against Pamela Black. Prima facie, Pamela Black was a different person from Paula Black. The difference in the names was not simply a minor misspelling of Paula's name, as was the case in *Sakaguchi*. As in *McNally*, where the entire first name was different, the court could not, on the application of plaintiff and without notice to defendant, simply change the name of defendant in the judgment from Pamela Black to Paula Black. The two names were presumed to signify two different persons, and Manson offered no proof that they were the same person.

Cases addressing amendment of a judgment to change or add the name of a judgment debtor demonstrate the need for notice to the affected defendant and a hearing regarding the propriety of the amendment. In *Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54 [47 P.2d 530] (*Mirabito*), the plaintiff sued San Francisco Dairy Company, alleging it was the employer of a negligent individual defendant who had been involved in an automobile accident with the plaintiff. At trial, the evidence showed the individual defendant was employed by Dairy Delivery Company, Inc. Judgment was entered against San Francisco Dairy Company and the individual. San Francisco Dairy Company appealed, contending there was insufficient evidence it was the individual's employer. The Supreme Court affirmed, finding San Francisco Dairy Company was the alter ego of Dairy Delivery Company. Thereafter, by noticed motion, the plaintiff obtained an order adding Dairy Delivery Company to the judgment as a judgment debtor. Dairy Delivery Company moved to set aside the order; the court denied the motion and Dairy Delivery Company appealed, contending the order was in excess of the trial court's jurisdiction and void for lack of jurisdiction of Dairy Delivery Company. The court concluded: "The rule has long been declared in

California that where the facts warrant, courts may amend pleadings to correctly designate the parties actually involved, even though the statute of limitations has run in favor of the party substituted. [Citations.] The basis of the rule is, of course, that the court having acquired jurisdiction of the person of the defendant and of the subject of the action, it necessarily possessed the power to correct a misnomer. In the cases last mentioned, it is true, no judgment had been rendered at the time of the amendment. Where, however, as here, the Supreme Court has stated the evidence is sufficient to warrant the conclusion that in effect the two corporations are identical; where, as here, the action was fully and fairly tried with at least the direct financial assistance of appellant; and where, as here, nothing appears in the record to show that Dairy Delivery Company could have produced a scintilla of evidence that would have in any way affected the results of the trial, there is no basis for a different rule. The trial court having acquired jurisdiction of San Francisco Dairy Company must likewise be held to have acquired jurisdiction of its *alter ego*, the appellant herein. To hold otherwise upon the facts herein would be to deny respondent the fruits of fairly contested litigation, place a premium upon acts and conduct which have misled a litigant, and frustrate the very purpose of our jurisprudence." (*Mirabito, supra*, 8 Cal.App.2d at p. 60.)

In *Thomson v. L. C. Roney & Co.* (1952) 112 Cal.App.2d 420 [246 P.2d 1017] (*Thomson*), the plaintiff sued L.C. Roney, Inc., and obtained a judgment against it. After the judgment was final, the plaintiff conducted a judgment debtor examination and obtained information indicating that company was the alter ego of Southwestern Development Company. The plaintiff moved to add Southwestern's name to the judgment as a judgment debtor. After a hearing and presentation of evidence, the court ordered that Southwestern's name be added to the judgment.

■    On appeal, the court concluded the case was like *Mirabito*, although proof that the two companies were alter egos was not made at trial, but after entry of judgment. The court stated: "Where a court may with propriety amend a judgment, evidence dehors the record is admissible, upon proper notice to the adversary party, in order to make the judgment speak the truth. [Citations.] Since the court had jurisdiction over the defendant, it had jurisdiction to make its judgment reflect the defendant's true name. [Citations.] A question having arisen as to the identity and character of the defendant upon whom the judgment was binding the court possessed the power to adopt a suitable procedure for the purpose of determining that question. [Citation.] Under the authority of this section the court properly exercised its power by taking evidence, after proper notice, in order to determine the true name of defendant." (*Thomson, supra*, 112 Cal.App.2d at p. 427.)

Plaintiff sued Pamela Black. The proof of service indicates he served Pamela Black. The original judgment was entered against Pamela Black. Prima facie, Pamela Black was a different person from Paula Black. There is no evidence Paula Black knew she was the person plaintiff intended to name as a defendant in his complaint. Plaintiff did not amend the complaint to correct Black's name prior to entry of default and judgment; rather, he proceeded to obtain a judgment against Pamela Black. Almost six years after that judgment was entered, Manson obtained an ex parte order amending the judgment to substitute Paula Black as a judgment debtor in lieu of Pamela Black. The amendment was not the correction of a clerical error. It affected Paula's substantial rights. The amendment was made without any notice to Paula or any opportunity for her to present evidence or argument against it. It was made without any evidentiary showing that Pamela and Paula were the same person. Consequently, the judgment against Paula was void on the face of the record and could be set aside at any time.

### B. *Extrinsic fraud or mistake*

Alternatively, relief from default and default judgment was properly granted on the ground of extrinsic fraud or mistake. After the six-month period for statutory relief has passed, the court may still grant relief on equitable grounds, including extrinsic fraud or mistake. (*Rappleyea, supra*, 8 Cal.4th at p. 981.) "Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17] (*Kulchar*).) It occurs when " 'the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff.' " (*Ibid.*) In those situations, there has not been "a real contest in the trial or hearing of the case," and the judgment may be set aside to open the case for a fair hearing. (*Ibid.*)

Extrinsic mistake occurs "when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea, supra*, 8 Cal.4th at p. 981.) In contrast with extrinsic fraud, extrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present. (*Kulchar, supra*, 1 Cal.3d at p. 471.) Relief will be denied, however, if the complaining party's negligence permitted the fraud to be practiced or the mistake to occur. (*Id.* at p. 473.)

Black was served with the complaint, but it did not name her as a party; it named Pamela Black and Douglas Shinn as defendants. Black did not at that time know who Shinn was. The complaint did not identify the automobile involved in the accident, and Black was not aware of any accident in which an automobile owned by her was involved. She did not ignore the complaint, but contacted plaintiff's attorney and advised him of her belief he had served the wrong person. The attorney did not identify the vehicle involved in the accident or confirm that she was the intended defendant.

Plaintiff did not subsequently amend the complaint to name Paula Black as the proper defendant, and then pursue the litigation against her. Knowing that there was a possible error in the names and that Black believed the complaint had been served on the wrong person, plaintiff's attorney nonetheless proceeded to take the default of Pamela Black and to obtain a judgment against her. Four years later, plaintiff apparently tried to amend the judgment to name Paula Black as the defendant and judgment debtor, by asserting there was a clerical error in the judgment.[3] The trial court denied the request, on the ground the error was not a clerical error. Six years after judgment was entered, and without any notice to Black at all, plaintiff obtained an order amending the judgment to replace Pamela Black with Paula Black as the judgment debtor.

On these unique facts, we believe the trial court correctly concluded Black acted reasonably and not negligently in response to service of the complaint on her. She notified plaintiff's counsel of the perceived error in service and believed when she received a request for default judgment, again directed to Pamela Black, that she was not the intended defendant. The circumstances amounted to either extrinsic fraud, in that plaintiff continued to proceed against Pamela Black, even after knowing he had either named the wrong defendant in the complaint or served the wrong person with the complaint, or extrinsic mistake, in that Paula Black was misled to mistakenly believe that she was not the intended defendant by plaintiff's inaction after being informed that she was not Pamela Black, the named defendant. In either case, the uncorrected error in the name of defendant prevented Black from appearing and defending; that error, combined with the subsequent amendment of the judgment without notice, resulted in an unjust judgment against Black.

---

[3] The record is not clear. The docket entries indicate a motion to correct a clerical error in the judgment, supported by a memorandum of points and authorities and request for judicial notice, was filed on September 15, 2003, and denied on October 22, 2003, because "[t]his was not a clerical error." The only portion of the motion appearing in the clerk's transcript, however, is the request for judicial notice, which does not indicate the nature of the correction requested, but includes a printout of DMV records showing the registered owners of a vehicle, one of whom was Paula Black.

■ To qualify for equitable relief on the ground of extrinsic fraud or mistake, the moving party must demonstrate diligence in seeking to set aside the default once it was discovered. (*Rappleyea, supra,* 8 Cal.4th at p. 982.) Black discovered the default and judgment against her in October 2005, when she received the order requiring her to appear for a judgment debtor examination and Manson's attorney informed her that there was a judgment against her. The court noted Black thereafter consulted two attorneys, but received inaccurate advice that there was nothing she could do. She brought her motion to set aside the judgment in 2008, after Manson attempted to obtain an order for the sale of her residence and she learned from her own legal research that a motion to set aside the judgment was an available remedy. Implicitly, the court found Black acted diligently, in light of the discouraging legal advice she received.

We find no abuse of discretion in the trial court's grant of equitable relief.

### III. Bona Fide Purchaser

Manson asserts that a motion to set aside a default or default judgment will not be granted against a bona fide purchaser, citing *Marlenee v. Brown* (1943) 21 Cal.2d 668, 675 [134 P.2d 770] (*Marlenee*). It argues Black's motion to set aside the default and default judgment should have been denied because Manson was a bona fide purchaser. *Marlenee,* however, did not involve the setting aside of a default or a default judgment. In *Marlenee,* the executrix of the estate of her deceased husband sought to set aside the order of the probate court affirming the sale of real property of the estate to a third party, who subsequently conveyed the property to the Browns, who claimed to be bona fide purchasers for value without notice of the executrix's claimed interest. *Marlenee* also did not involve a claimed bona fide purchaser of a judgment. Rather, it involved a bona fide purchaser of real property that was the subject of the legal proceedings in which the challenged order was made. Nothing in *Marlenee* suggests that a judgment creditor's assignment of a judgment to a third party, without more, necessarily precludes setting aside the judgment.

■ An assignment transfers the interest of the assignor to the assignee. Thereafter, " '[t]he assignee "stands in the shoes" of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment.' " (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096 [4 Cal.Rptr.3d 475].) Thus, whatever defenses Black could raise against the judgment obtained by plaintiff, she was free to raise against Manson as the assignee of plaintiff's judgment. Nothing in *Marlenee* abrogates this rule.

Manson contends the prejudice to it as an innocent purchaser or assignee must be considered. It asserts it "had every right when it purchased the

judgment in 2005 to believe the judgment was valid because the judgment had been entered in 1999 and respondent had taken no action to set aside the default or vacate the judgment." The judgment was assigned to Manson on May 6, 2005. At that time, the judgment was against Pamela Black. Plaintiff's attorney had been notified prior to entry of judgment of a possible error in defendant's name. Plaintiff's attorney also had in his possession, at least as of September 15, 2003, DMV documents indicating the owner of the vehicle at the time of plaintiff's accident was Paula Black, not Pamela Black. Two months *after* the assignment, plaintiff requested and obtained an ex parte amendment of the judgment to name Paula as the judgment debtor, without giving notice to her. Consequently, Manson was assigned an apparently valid judgment against Pamela Black. It has not shown it had any reason to believe plaintiff had a valid judgment against Paula Black at the time the judgment was assigned. Any error in amending the judgment without notice to Black was attributable to plaintiff and Manson. We find no error in the trial court's grant of equitable relief.

## *DISPOSITION*

The order is affirmed. Defendant Black is awarded her costs on appeal.

Vartabedian, Acting P. J., and Kane, J., concurred.