Filed 9/19/22  Steichen v. Huffman CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| CHRISTINE STEICHEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STANLEY HUFFMAN,<br><br>    Defendant and Respondent. | D079381<br><br><br>(Super. Ct. No. 37-2018-00030963-CU-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed and remanded with directions.

Law Office of Johanna S. Schiavoni, Johanna S. Schiavoni; Trails Law Group, and Hillery M. Stones for Plaintiff and Appellant.

White & Amundson and Daniel M. White for Defendant and Respondent.

Christine Steichen appeals from an order granting a motion to set aside a default judgment against Stanley Huffman.  She asserts the trial court's order constitutes an abuse of discretion because Huffman was not diligent in seeking relief from the judgment.  We agree.  Accordingly, we reverse and

remand the matter to the trial court with directions to enter an order denying the motion to set aside the default judgment and re-enter the default judgment and writ of execution.

FACTUAL AND PROCEDURAL BACKGROUND

Steichen and Huffman were neighbors in Escondido, California. In July 2017, Huffman was convicted of felony vandalism for poisoning Steichen's plants and trees over several years.

On June 21, 2018, less than a year after Huffman's conviction, Steichen filed suit, seeking injunctive relief and damages. On July 31, 2018, Huffman was personally served with the summons, complaint, and supporting documents at his address in California. The following day, Huffman moved out of California to Reno, Nevada.

On August 6, 2018, Huffman sent a text message to his criminal defense attorney, Justin Murphy, stating that he had been served with a summons and asking Murphy to "call or text" him back. Murphy responded the same day that he would reach back out to Huffman. Over the next several weeks, Huffman sent Murphy three more texts asking about the case's status. Huffman finally spoke to Murphy on September 26, 2018. In his declaration in support of his motion to set aside the later entered default judgment, Huffman stated he also sent Murphy a $2,500 check for Murphy to represent him in the case.

On November 29, 2018, Steichen filed her First Amended Complaint (FAC) with a statement of damages. On December 22, 2018, Huffman was personally served with the FAC and the statement of damages at his address in Nevada. The same evening, Huffman texted Murphy and asked, "Am I required to do anything?" Murphy replied on January 3, 2019, "You don't need to do anything."

2

On January 28, 2019, Huffman texted Murphy that he received an application for entry of default that had been filed four days earlier. He also texted Murphy, "I don't know what form [*sic*] means. Did you get a copy? Advise me what you need me to do."

On Thursday, May 9, 2019, Huffman received an application for court judgment and again texted Murphy. The next day, Murphy texted Huffman back, "I haven't gotten anything from [Steichen's] attorney. ... I'll call you Monday. Nothing will change by then." Huffman did not hear back from Murphy on Monday. The following Friday, May 17, 2019, Huffman sent a follow-up text message stating, "Justin, since I didn't hear from you Mon. Everything must be under control. Guess you received papers I received. ... If you have any new info please contact me."

Several weeks later, the trial court held a default prove-up hearing. Huffman did not appear personally or through counsel. The court entered a default judgment against Huffman and awarded Steichen $122,479.66 in principle damages, $100,000 in punitive damages, $22,814.17 in attorney fees, and $730.35 in prejudgment costs.

On November 28, 2019, Huffman received a notice of levy and a writ of execution, the latter of which had been issued two weeks earlier. Huffman texted Murphy the next day, stating, "I'm very concerned do I owe this. please advise me what to do." The following morning, Huffman texted Murphy that he would send all the documents from the Sheriff to Murphy. Huffman also texted Murphy a screenshot of a signed claim of exemption form.

On December 3, 2019, Huffman followed up again, asking Murphy to "[p]lease update me on what's happening when you get a chance. I know you

are busy." Murphy texted back eight days later that "I've been looking into it. I should understand what is going on by the end of the week."

On December 19, 2019, Huffman received another notice of levy, this one from Silvergate Bank. He texted Murphy, asking, "How can this happen???? I have never heard anything from courts. ... Please call or text me ASAP!!" Murphy responded the following day, asking Huffman to send him the paperwork. After that text exchange, communications between Murphy and Huffman ceased entirely.

Fifteen months later, on March 22, 2021, Huffman received the application for foreign judgment, informing him that Steichen had moved to domesticate her judgment in Nevada. One week later, Huffman retained new counsel in California. On April 6, 2021, Huffman moved to set aside the default judgment at the trial court. On May 14, 2021, the court heard oral arguments from both parties and later granted Huffman's motion to set aside the judgment. Steichen timely appealed.

## DISCUSSION

Steichen asserts the trial court abused its discretion in setting aside the default judgment. To set aside a default judgment on equitable grounds, the moving party must satisfy three elements: (1) a satisfactory excuse with respect to the entry of default, (2) diligence upon discovery of default, and (3) a meritorious case. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 (*Rappleyea*).)

Steichen concedes that Huffman presented a satisfactory excuse based on Murphy's positive misconduct by failing to represent Huffman until December 2019. Steichen argues, however, that after Murphy cut off communication with Huffman, he failed to satisfy the required element of diligence as a matter of law by not taking any action to set aside the default

4

judgment for 15 months. Steichen also asserts Huffman failed to establish a meritorious defense.

We agree with Steichen that because Huffman provided no evidence to support a finding of diligence after December 2019, which was separately required from Murphy's misconduct, the trial court abused its discretion in granting relief.

I

*General Legal Standards*

A trial court may set aside a default judgment either under its statutory power within the first six months, or thereafter under its equitable power. Code of Civil Procedure section 473[1], subdivision (b), confers on the trial court the statutory authority to relieve a party from a judgment taken against him through "mistake, inadvertence, surprise or excusable neglect." Under this provision, the defaulted party must move "within a reasonable time, in no case exceeding six months." "The six-month period runs from entry of default, not entry of judgment." (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42.)

After the statutory period has expired, a trial court may still grant relief from a default judgment on equitable grounds, even if statutory relief is unavailable. (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855 (*Weitz*).) "One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea, supra*, 8 Cal.4th at p. 981.) "Extrinsic mistake is found … [in] cases involving negligence of a party's attorney …." (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 472.)

---

1      All further statutory references are to the Code of Civil Procedure unless otherwise specified.

5

"When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances.  '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court.  Beyond this period there is a strong public policy in favor of the finality of judgments[.]' "  (*Rappleyea, supra*, 8 Cal.4th at pp. 981–982.)

To further this policy, the Supreme Court has adopted a stringent test for equitable relief based on positive misconduct.  (*Rappleyea, supra*, 8 Cal.4th at p. 982.)  As stated, " '[t]o set aside a *judgment* based upon extrinsic mistake one must satisfy three elements.  First, the defaulted party must demonstrate that it has a meritorious case.  Second, the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action.  Last, the moving party must demonstrate diligence in seeking to set aside the default once … discovered.' "  (*Ibid*.)

" 'A motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order.' "  (*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 736 (*Aldrich*).)  " 'That discretion, ... " 'is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.  It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " ' "  (*Id*. at p. 737.)

## II

### *Satisfactory Excuse*

In general, to obtain equitable relief based on mistake or inadvertence of counsel, a party must demonstrate that "such mistake, inadvertence, or general neglect was excusable 'because the negligence of the attorney … is imputed to his client and may not be offered by the latter as a basis for relief.' [Citation.] The client's redress for inexcusable neglect by counsel is, of course, an action for malpractice." (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 (*Carroll*).)

"However, an exception to this general rule has developed. '[Excepted] from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct*, and the person seeking relief is relatively free from negligence.' " (*Carroll, supra*, 32 Cal.3d at p. 898.) The rationale is that " 'the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship*, and for this reason his negligence should not be imputed to the client.' " (*Ibid*.) "An attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action." (*Daley v. County of Butte* (1964) 227 Cal.App.2d 380, 391 (*Daley*).)

The Supreme Court has cautioned that this exception should be applied narrowly. (*Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, 73.) "Positive misconduct is found where there is a total failure on the part of counsel to represent his client." (*Aldrich, supra*, 170 Cal.App.3d at p. 739.) Put differently, positive misconduct is established when "abandonment of the client appears." (*Carroll, supra*, 32 Cal.3d at p. 900.) "What constitutes 'abandonment' of the client depends on the facts in the particular action."

(*Seacall Dev. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 205.)

In granting Huffman's motion to set aside the default judgment, the trial court implicitly determined that Murphy committed positive misconduct, which presents a satisfactory excuse for purposes of determining extrinsic mistake. Steichen does not contest this issue for the purpose of this appeal, and we agree that the record supports the trial court's implicit finding of this element. (See *Aldrich, supra*, 170 Cal.App.3d at p. 738 [holding that counsel's positive misconduct qualifies as an extrinsic mistake]; *Orange Empire Nat'l Bank v. Kirk* (1968) 259 Cal.App.2d 347, 353 (*Orange Empire*) ["[W]here a client is unknowingly deprived of effective representation by counsel's failure … and the action is dismissed by reason of the attorney's misrepresentation, the client will not be charged with responsibility for the misconduct…, providing the client acts with due diligence in moving for relief after discovery of the attorney's neglect, and the opposing party's rights will not be prejudiced nor suffer injustice as a result of the granting of relief."].)

Specifically, the record provides ample evidence that Murphy "de facto substituted himself out of the case," leaving his client with "representation only in a nominal and technical sense." (*Carroll, supra*, 32 Cal.3d at p. 900; *Aldrich, supra*, 170 Cal.App.3d at p. 739.) As Huffman's counsel, Murphy failed to respond to the original complaint or the FAC, resulting in a default judgment against his client. Further, Murphy assured Huffman more than once that he would take care of the matter. For instance, when Murphy received the FAC, he told Huffman, "[y]ou don't need to do anything" but failed to institute any action to secure relief for Huffman. (See *Orange Empire, supra*, 259 Cal.App.2d at p. 354 [attorney displayed a "flagrant

8

disregard for his client's best interests" when he continued to falsely reassure his client after the entry of default but, in actuality, did nothing].)  While Huffman did not assiduously seek out his attorney, he established a satisfactory excuse with respect to the entry of default.  (See *Daley, supra*, 227 Cal.App.2d at p. 392 [a client "should not be forced to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers"].)

III

*Diligence*

"One moving in equity to set aside a default judgment must act diligently in making his motion after he learns of the default judgment." (*Weitz, supra*, 63 Cal.2d at pp. 856–857.)  The client's own negligence in following up and pursuing his case is independently scrutinized, even in cases of positive misconduct on the part of the attorney.  (*Aldrich, supra*, 170 Cal.App.3d at p. 739.)

In *Weitz*, the Supreme Court held that two factors determine whether one moving in equity acted diligently upon discovery of the default.  First, whether the nonmoving party suffered prejudice by the delay and, second, whether the moving party "in the light of the circumstances known to him acted unreasonably in not filing the motion … earlier." (*Weitz, supra*, 63 Cal.2d at p. 857.)  In a case of excuse based on counsel's positive misconduct, the court must consider "whether the client himself acted expeditiously in seeking relief upon discovery of his counsel's improper conduct." (*Orange Empire, supra*, 259 Cal.App.2d at p. 354.)

Steichen urges that *Benjamin v. Dalmo Manufacturing Co.* (1948) 31 Cal.2d 523 (*Benjamin*), which held that an unexplained three-month delay after learning of the entry of default is "unreasonable as a matter of law,"

9

applies. *Benjamin*, which addressed the court's authority under section 473, subdivision (b) and not its equitable power, also stated that the defaulted party must provide "some explanation, by affidavit or testimony, of any extended delay" and move "within a reasonable time." (*Benjamin,* at p. 529.) Although decided in the context of the court's statutory authority, *Benjamin* provides important guidance on what amount of delay by a defaulted party is reasonable. Critically, "[t]o the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider." (*Weitz, supra,* 63 Cal.2d at p. 857.)

Huffman contends that he demonstrated sufficient diligence because he promptly and consistently reached out to Murphy for advice and forwarded legal documents throughout the attorney-client relationship that ended in December 2019. Steichen asserts Huffman failed to act with diligence in seeking relief because Huffman took no action after December 2019.

We agree with Steichen that Huffman was required to exercise diligence in seeking relief after he stopped communicating with Murphy. The client's diligence stands as an independent consideration from the counsel's misconduct. (*Aldrich, supra,* 170 Cal.App.3d at p. 739.) Because it is the client who bears the outcomes of a lawsuit and has the interests and obligations to pursue his case to a final resolution, a counsel's misconduct does not forever discharge the client of such responsibility. While an attorney's positive misconduct may establish a satisfactory excuse with respect to the entry of default, here, it did not excuse Huffman's own negligence in failing to take any action for 15 months after his text messages with Murphy ceased.

Huffman's delay in acting to challenge the judgment after the abandonment was objectively unreasonable and prejudicial. Huffman

presented no explanation for his failure to act from December 2019 to March 2021. As a party with real interests in pursuing this case, Huffman may "not be permitted to wait as he did until more than a year after he concededly had actual notice of such judgment before attacking it. There must be a finality to litigation, and if a party may wait more than a year before seeking relief from a default judgment, then why may he not wait five, ten or more years?" (*Washko v. Stewart* (1941) 44 Cal.App.2d 311, 318.)

Because Huffman failed to establish his diligence after December 2019, we conclude the trial court abused its discretion in granting Huffman relief from the default judgment.[2]

## DISPOSITION

The order granting the motion to set aside the default judgment is reversed. The case is remanded to the trial court with directions to enter an order denying the motion to set aside the default judgment and re-enter the default judgment and writ of execution. Costs are awarded to appellant.

McCONNELL, P. J.

WE CONCUR:

AARON, J.

DATO, J.

---

[2] Because Huffman was required to establish all three elements of the test set forth in *Rappleyea,* we need not reach the issue of whether Huffman had a meritorious defense to Steichen's claims.

11