Filed 3/3/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BARBARA POLITSCH, | B332393 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC396164 |
| v. | |
| METROPLAZA PARTNERS, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Stephen I. Goorvitch, Judge. Affirmed.

Joseph S. Socher for Plaintiff and Appellant.

Lesnick Prince Pappas & Alverson, David S. Alverson and Michael E. Pappas for Defendant and Respondent.

_____

**SUMMARY**

Plaintiff Barbara Politsch obtained a default judgment for about $175,000 against defendant Metroplaza Partners, LLC (defendant or Metroplaza) in a premises liability case. As it happens, defendant did not own the premises, having sold the property in 2005, more than a year before plaintiff was injured. Defendant was not served with the summons and complaint either, but defendant and its counsel found out about the default judgment (entered in March 2012) in January 2014.

Defendant's counsel did not advise defendant to do anything about the default judgment, so defendant did nothing. Neither did plaintiff, until eight years later in February 2022, when plaintiff, with new counsel, renewed the judgment; advised defendant's counsel of plaintiff's intent to enforce the judgment; and applied for an order for a debtor's examination.

On August 5, 2022, defendant filed a motion to set aside the default judgment. The trial court granted the motion under its equitable powers. Plaintiff appeals, contending defendant did not demonstrate the exceptional circumstances necessary for equitable relief from a default judgment, and emphasizing defendant's failure to act for eight years after it learned of the default judgment.

We find no abuse of discretion in the trial court's ruling, and affirm the order setting aside the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.    August 2006 through March 2012**

In August 2006, plaintiff was injured when she tripped and fell outside an office of Dollar Rent-A-Car (Dollar). In August 2008, she sued Dollar and Doe defendants, alleging claims for general negligence and premises liability.

On March 11, 2010, plaintiff filed a notice stating the matter had been settled with Dollar.

2

On March 16, 2010, plaintiff amended her complaint, identifying Doe No. 1 as defendant Metroplaza Partners, LLC.

On May 13, 2010, and May 20, 2010, respectively, plaintiff filed proofs of service on defendant of the summons and complaint and a statement of damages. Both proofs were signed by Walter Davis, stating he personally served the documents on Michael Smooke, defendant's agent for service of process, at 865 S. Figueroa Street in Los Angeles on April 1, 2010. (Mr. Smooke was defendant's longtime lawyer, then at Fulbright & Jaworski LLP, at that address.) Mr. Davis was not a California registered process server.

On May 20, 2010, plaintiff filed a request for entry of default, entered as requested on that date. Her counsel, David Pheil, declared he mailed a copy on May 11, 2010 to "Metroplaza Partners, LLC, 865 S. Figueroa St."

On July 13, 2011, Alan Burford (also not a registered California process server) signed a proof of personal service of an amended statement of damages on Mr. Smooke as defendant's agent for service of process, at the 865 S. Figueroa address.

On December 22, 2011, plaintiff's counsel (Mr. Pheil) mailed a copy of a request for court judgment to "Metroplaza Partners, LLC" at the 865 S. Figueroa Street address.

On February 1, 2012, plaintiff filed the amended statement of damages (which totaled $ 1.7 million).

On March 20, 2012, the court entered a default judgment for plaintiff in the amount of $175,627.47. The record reflects no further activity in the case until January 2014, nearly two years later.

## 2.    January 2014 through February 2022

Plaintiff is a German national who had insurance with a German insurer, who tasked a worldwide claims service with collecting the judgment. That company assigned its North

American partner, Transworld Claims Solutions, Inc. (TCS) to the job.

On January 28, 2014, TCS's director, Doug Clement, wrote (e-mailing the letter) to defendant's lawyer, Mr. Smooke, defendant's registered agent, who was then at the Eisner Kahan law firm in Beverly Hills. Mr. Clement asked for Mr. Smooke's cooperation and mailed him a copy of the default judgment on January 29, 2014.

Mr. Smooke called Mr. Clement on January 31, 2014, stating that Metroplaza was now based in Pennsylvania; he did not recall being served with the complaint; and he had forwarded Mr. Clement's communications, including the default judgment, to Metroplaza. According to Mr. Clement's later declaration, "Mr. Smooke failed to respond to further efforts to speak with him regarding this matter."

Nothing else happened until eight years later, in February 2022.

On February 15, 2022, plaintiff filed a substitution of attorney, naming David Bernstein to replace Mr. Pheil. A week later, plaintiff applied for an order requiring Mr. Smooke (mistakenly identified as "managing member" of Metroplaza) to appear for a debtor's examination on April 8, 2022. On that date, the court took the hearing on the application off calendar because plaintiff did not appear and did not file valid proofs of service.

### 3. Defendant's Motion

On August 5, 2022, defendant filed its motion to set aside the judgment. In addition to requesting judicial notice of various court documents described above, defendant presented declarations from Mr. Smooke; Steven C. Thomas, the managing member of Metroplaza; and an investigator hired to locate Walter Davis, who had purportedly personally served Mr. Smooke with the summons and complaint.

4

Mr. Smooke acknowledged he was the registered agent for service of process from May 2001 until April 2022. He stated he "[did] not recall ever receiving service of the Summons and Complaint," and if he had done so, he would have sent a copy to Mr. Thomas, and "would have arranged for one of the litigators from my firm to respond to the lawsuit on Metroplaza's behalf." Mr. Smooke further stated that the law firm had procedures in place to handle service of process, with Reception accepting the documents on his behalf, and "[t]he process server would not have been let back to my office to personally serve me, nor would reception call me to the lobby to accept the documents myself." He also said that the "first time I recall ever hearing about this lawsuit" was in February 2022.

Mr. Thomas stated he was the managing member of defendant and had been managing member since 2001. He stated that Metroplaza once owned the property where plaintiff was injured but sold the property on June 16, 2005. Mr. Thomas attached a copy of the grant deed recording the transfer. After the sale, Metroplaza "had no responsibility for or obligations with respect to leasing, improving, maintaining, supervising, controlling, or operating" the property. Mr. Thomas did not recall "ever receiving service of the Summons and Complaint or Default Judgment in this matter." He stated that the "first time I recall ever hearing about this lawsuit" was in February 2022.

The investigator, Summer Dos Santos, described her efforts to locate the process server, Walter Davis, all of which were unsuccessful; Ms. Dos Santos knew of "no other source from which [Mr. Davis's] whereabouts can be ascertained."

### 4.    Plaintiff's Opposition and Defendant's Reply

On September 15, 2022, plaintiff responded with declarations from her counsel, David Bernstein, and from Doug Clement.

5

Mr. Clement provided the information recounted above about his actions in late January 2014, informing defendant's counsel about the default judgment.

Plaintiff's counsel attached various documents already described, including the Walter Davis proofs of personal service filed in May 2010, and Alan Burford's proof of personal service of an amended statement of damages on Mr. Smooke in July 2011.

Counsel Bernstein's declaration also attached a copy of a declaration Tina Tahbaz executed in March 2010, around the time plaintiff settled with Dollar. Ms. Tahbaz was a principal of the company doing business as Dollar when plaintiff's accident occurred. Her declaration stated that Dollar had a lease with Metroplaza dated June 5, 2002, and that Dollar extended the lease for an additional three years by letter dated April 25, 2005. Ms. Tahbaz stated that under the lease, "Dollar had no control, responsibility, or authority over the common areas in the shopping center," including the sidewalk where the accident occurred. (The Bernstein declaration characterized Ms. Tahbaz's declaration as stating "under penalty of perjury that [Metroplaza] controlled the premises at the time of the accident pursuant to a lease extension," but that is plainly not what Ms. Tahbaz said.)

On June 30, 2023, after several continuances, defendant filed a reply to plaintiff's opposition, including a supplemental declaration from Mr. Thomas, defendant's managing member. Mr. Thomas stated that his initial declaration (that he did not recall ever hearing about this lawsuit until February 2022) was true when he signed it, but after plaintiff filed her opposition, he discovered the e-mail exchange in January 2014 in which Mr. Smooke forwarded copies of Mr. Clement's letter and the default judgment. In Mr. Smooke's January 2014 e-mail, he asked Mr. Thomas "if I recognized this because he did not, and I replied to him via email that I did not recall ever seeing this. My

6

email reply to Mr. Smooke also reflects that I asked him further questions about the documents he had forwarded to me, but I have not located in my emails any contemporaneous reply by him to my questions or further communications from him about the Default Judgment prior to 2022."

Mr. Thomas further declared that Mr. Smooke was Metroplaza's attorney in 2014, so "I relied on him to advise whether Metroplaza should take any action in response to the documents he had received from [Mr. Clement]. Metroplaza did not take any action on the Default Judgment at that time because Mr. Smooke did not advise me that any action should be taken. If Mr. Smooke had advised at that time to move to set aside the Default Judgment, Metroplaza would have done so. It was not until 2022 that Mr. Smooke and his firm advised Metroplaza that it should act to set aside the Default Judgment by filing the instant Motion."

## 5. The Trial Court's Ruling

The trial court granted defendant's motion to vacate the judgment, finding defendant satisfied the three elements necessary to set aside a judgment based on extrinsic fraud or mistake.

First, defendant "appear[ed] to have a meritorious defense" because it sold the property more than a year before the accident and did not maintain any control over it. Plaintiff's counsel argued at the hearing that defendant maintained control over the property, citing the Tahbaz declaration. The court pointed out the Tahbaz declaration did not support plaintiff's argument, which (in addition) was "suspect on its face, as there is no legal or practical reason why a former owner would maintain control over a property."

Second, defendant "[had] an excuse for not defending the case: It was never served." The court stated it "may set aside the

7

default judgment as void if Defendant did not have 'actual or constructive notice' of the proceedings." The court relied on Mr. Smooke's declaration (see *ante,* at p. 5) and pointed out that Walter Davis was not a registered process server and therefore the proof of service was not entitled to a presumption of validity. The court also relied on the declaration of defendant's private investigator, Ms. Dos Santos, who could not locate a person named Walter Davis with an address history in Inglewood, and who stated that his purported telephone number " 'did not produce any current or historical records of being affiliated with any individual.' " The court concluded the evidence was "sufficient to establish that Defendant was never served with the summons and complaint, and Plaintiff advances no evidence to the contrary."

Third, the court "reluctantly" found defendant exercised due diligence. The court described defendant's acknowledgement of having received the January 2014 communications from Mr. Smooke about the default judgment (see *ante*, at pp. 6-7), but cited Mr. Thomas's declaration that defendant " 'did not take any action on the Default Judgment at that time because Mr. Smooke did not advise [Mr. Thomas] that any action should be taken.' " The court concluded that defendant "can rely on lacking advice from counsel as an excuse for not having moved to set aside the default judgment sooner," relying on case authority where the defendant was given incorrect advice; the court stated there was "no substantive distinction between giving incorrect advice . . . and failing to give correct advice."

The court further stated it "[had] concerns that Defendant took so long to move to set aside the default judgment but grants the motion for additional reasons." Those reasons were the "strong preference for cases to be decided on the merits," and the court's "concerns that an injustice would result by not setting

8

aside this default judgment," citing the "serious question whether Defendant is the correct party in this case."

The court set aside the default and the default judgment, and plaintiff filed a timely notice of appeal.

## DISCUSSION

### 1.    The Standard of Review

We review an order vacating a default on equitable grounds for abuse of discretion.  (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 (*Manson*); see also *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 907-908 ["Trial court rulings on motions for relief from default are subject to an abuse of discretion standard.  [Citation.]  Even so, '[w]ith respect to setting aside a default judgment, it is the policy of the law to favor, whenever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial on the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made.' "].)

### 2.    The Legal Principles

"When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).) *Rappleyea* explains that, "[a]pparently to further the . . . policy [in favor of finality of judgments], one appellate court has created a stringent test to qualify for equitable relief from default on the basis of extrinsic mistake.  'To set aside a *judgment* based upon extrinsic mistake one must satisfy three elements.  First, the defaulted party must demonstrate that it has a meritorious case. Second[], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the

9

original action.  Last[], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.' " (*Id.* at p. 982, quoting *Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147-1148 (*Stiles*), *Rappleyea*'s italics.)

## 3.     Contentions and Conclusions

### a.     The trial court's discretion

Plaintiff contends the trial court's decision was based on an erroneous view of its discretionary authority and a failure to apply correct legal standards.  None of plaintiff's several arguments on this point is accurate.

Plaintiff first asserts that the trial court believed it had "little or no discretion to deny the motion."  Plaintiff cites the trial court's initial comment that its "immediate reaction" to defendant's long delay in coming to court was to question why it should set aside the default, but that the *Manson* case (discussed, *post*) required it to do so.  (*Manson, supra,* 176 Cal.App.4th at p. 49 [equitable relief was warranted for a defendant who received inaccurate legal advice].)  From this comment, plaintiff concludes the court believed it had no discretion.  But the court's actual conclusion was that "the law and fairness requires that I grant the motion."  Moreover, after extensive arguments, the court took the matter under submission, and in its written order, expressly stated that it "agree[d] that it has discretion to deny this motion, given the length of time that has passed since Defendant learned of the default judgment."

Next plaintiff contends the trial court erred in relying on the preference for deciding cases on the merits as support for its decision, because "that preference applies only during the six-month statutory period" for bringing a motion.  This contention is likewise misplaced.  *Rappleyea* does not state that a court may

10

only consider that preference for the six-month statutory period. The court stated that after the statutory period, " 'there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.' " (*Rappleyea, supra,* 8 Cal.4th at p. 982.) Here, the trial court specifically discussed and considered each of the three factors of the "stringent test to qualify for equitable relief from default on the basis of extrinsic mistake" (*ibid.*), citing the preference for a merits decision as an "additional reason[]"—along with concerns about the injustice that would result if the judgment were not set aside—for granting the motion. We see no error in doing so.

Finally, plaintiff complains the trial court treated defendant's meritorious defense—that it did not own the premises where plaintiff was hurt—as the "overriding factor rather than one of three essential elements." This is wrong, too. The fact that defendant did not own the property was certainly of concern to the court; as just mentioned, the court stated its "concerns that an injustice would result by not setting aside this default judgment." But it is equally clear that the court carefully considered the satisfactory excuse and diligence elements and found they were met as well.

Plaintiff points to two cases where courts found that denial of a motion to set aside the judgment was appropriate "regardless of whether the defendant had a meritorious defense." That is hardly surprising, because different circumstances will generate different conclusions.

In *Stiles,* the defendant established a meritorious case by filing a proposed verified answer denying the material allegations of the complaint. (*Stiles, supra,* 147 Cal.App.3d at p. 1148.) The defendant had no sufficient excuse for failing to respond timely to

11

the original action.  (*Id.* at pp. 1148-1149.)  The defendant (who was properly served) waited over 20 months after default was entered, and two months after being examined at a judgment debtor hearing, before moving to set aside the default judgment. (*Id.* at pp. 1146, 1149-1150.)  *Stiles* found the trial court abused its discretion in setting aside the judgment "[g]iven that the [defendant] satisfied only one of the three criteria necessary for setting aside a default."  (*Id.* at p. 1150.)

In *McCreadie v. Arques* (1967) 248 Cal.App.2d 39, 48 (*McCreadie*), the court found no abuse of discretion in the trial court's refusal to set aside the default judgment.  In *McCreadie,* the trial court was doubtful the defendant could escape liability for the claimed damage to her boat, but the defendant " 'might well be able to obtain a more favorable result' " as to the value of the boat.  (*Id.* at p. 45.)  The defendant also had an excuse for permitting the default to be taken, based on attorney neglect that was in turn based on the attorney's mental disability.  (*Id.* at pp. 45-46.)  But the trial court found the defendant, "in choosing to ignore all of the manifest indications that something was amiss, acted at his peril."  (*Id.* at p. 46.)  The defendant, who was "a man of substance and business acumen" (*id.* at p. 47), waited more than a year to seek relief, after receiving a letter from the plaintiff's counsel "personally advising him that the default judgment had been entered against him and mentioning a desire to effect a settlement in order to avoid the necessity of taking steps to enforce the payment" (*id.* at pp. 43, 47).  And, the trial court found the plaintiff would be "seriously prejudiced" if the default were set aside.  (*Id.* at p. 47.)

Notably, neither *Stiles* nor *McCreadie* involved a "wrong defendant"—a defendant that should not have been sued in the

first place.  The circumstances in those cases, and others, are significantly different from the circumstances before the trial court here.  In this case, plaintiff sued the wrong defendant, who was never served with the summons and complaint, and who, when it learned of the default judgment, relied on its longtime attorney for advice which never came.  And for eight years thereafter, plaintiff did nothing to enforce the judgment, so there were no "manifest indications that something was amiss" (*McCreadie, supra,* 248 Cal.App.2d at p. 46) until 2022.

### b.  The service issue

Plaintiff's second contention is that Metroplaza "failed to establish lack of service," and even if it did, plaintiff produced evidence her former counsel mailed his request for entry of default and his request for court judgment to "Metroplaza Partners, LLC" at Mr. Smooke's address, in May 2010 and December 2011, so there is no "reasonable explanation for its failure to act" upon receipt of those documents.  The trial court did not address the latter claim, apparently giving it no credence, and specifically addressed the lack of service of the summons and complaint.  The court concluded the evidence from Mr. Smooke and Ms. Dos Santos was "sufficient to establish that Defendant was never served with the summons and complaint, and Plaintiff advances no evidence to the contrary."  We agree and find it is clear defendant established " 'a satisfactory excuse for not presenting a defense to the original action.' "  (*Rappleyea, supra,* 8 Cal.4th at p. 982.)

### c.  The diligence issue

Finally, plaintiff argues at length that Metroplaza did not demonstrate diligence after learning of the default judgment in January 2014.  Plaintiff again cites *Stiles* and *McCreadie*.  Then

13

she cites cases that have found that a delay of a year or more "fails the diligence test." Then she cites cases she asserts "have held that the outside deadline for filing a motion to vacate on equitable grounds parallels the three-year statute of limitations for fraud," citing footnote 5 in *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 668, a case that does not involve a motion to vacate a default judgment. (*Hudson* involves a probate court's denial of a motion to set aside an order approving a conservator's account on the ground of extrinsic fraud. (*Id.* at p. 648.)) Plaintiff does not describe any of the cases gathered in the *Hudson* footnote, the most recent of which is almost 50 years old, and we instead adhere to the more recent contrary authority *Hudson* mentions. (See *Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 570-571 ["A motion to vacate a judgment for extrinsic fraud is not governed by any statutory time limit, but rather is addressed to the court's ' " 'inherent equity power' " ' to grant relief from a judgment procured by extrinsic fraud."].)

Plaintiff insists that defendant's failure to act in 2014 was "objectively unreasonable regardless of whether its attorney failed to advise it to act," citing *Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, where the court found there were no exceptional circumstances warranting equitable relief (*id.* at p. 20). In *Kramer,* the defendants answered the initial complaint, their counsel withdrew, "and defendants subsequently chose not to participate in this case." (*Id.* at p. 19.) *Kramer* stated, for example: "To the extent defendants were unaware of the amended complaint, it was due to their own negligence. They chose not to participate in the proceedings. They also missed every document served on them, including the amended

14

complaint, because they failed to inform the trial court and plaintiff of their current mailing address. Indeed, defendants made themselves unreachable by any means. They could not be reached by phone or e-mail, missing multiple phone calls from plaintiff and an e-mail from the trial court. Defendants cannot deliberately neglect this lawsuit and go off-grid, so to speak, and then complain that they lacked notice of the proceedings." (*Id.* at p. 20.) We cannot see how *Kramer* is in any way analogous to this case. We do not agree with plaintiff that, as a matter of law, defendant's failure to act in 2014 establishes lack of diligence that requires denial of the motion to set aside the default judgment.

Plaintiff tells us that the trial court's reliance on *Manson* was "fundamentally flawed." In *Manson,* the defendant discovered the default judgment against her in October 2005, when she received an order requiring her to appear for a judgment debtor examination. She consulted two attorneys, "but received inaccurate advice that there was nothing she could do." (*Manson, supra,* 176 Cal.App.4th at p. 49.) She brought a motion to set aside the judgment in September 2008, after the plaintiff tried to obtain an order for the sale of her residence "and she learned from her own legal research that a motion to set aside the judgment was an available remedy." (*Ibid.*) *Manson* concluded that "[i]mplicitly, the [trial] court found [the defendant] acted diligently, in light of the discouraging legal advice she received." (*Ibid.*)

The trial court credited Mr. Thomas's declaration that defendant relied on Mr. Smooke "to advise whether Metroplaza should take any action" and Metroplaza "did not take any action on the Default Judgment at that time because Mr. Smooke did

15

not advise [Mr. Thomas] that any action should be taken." Mr. Thomas further stated that if Mr. Smooke had advised him to file a motion to vacate the judgment, he would have done so. The court relied on *Manson* and concluded there was "no substantive distinction between giving incorrect advice . . . and failing to give correct advice."

Plaintiff criticizes the Thomas declaration (mistakenly referring to it as the Smith declaration); insists "there was *no erroneous advice*"; and concludes that "[g]iven [the] facts" stated (or not stated) in the Thomas declaration, "there is no reasonable explanation for Metroplaza's failure to act promptly" in 2014. The trial court concluded otherwise, and we cannot find an abuse of discretion on this record. *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, a case finding exceptional circumstances warranting equitable relief (*id.* at p. 1249), reminds us why. "[W]e may reverse only if we conclude the trial court's decision is ' "so irrational or arbitrary that no reasonable person could agree with it." ' [Citation.] That a different decision could have been reached is not sufficient because we cannot substitute our discretion for that of the trial court." (*Ibid.*)

The trial court's ruling was well within the bounds of reason, and so we affirm.

## DISPOSITION

The order is affirmed. Defendant shall recover costs on appeal.

GRIMES, Acting P. J.

WE CONCUR:

WILEY, J.                    VIRAMONTES, J.

16