Filed 12/10/24  Vector Fabrication v. Nguyen CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VECTOR FABRICATION, INC. et al.<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>HIEU MINH NGUYEN et al.,<br><br>Defendants and Appellants. | H051452<br>(Santa Clara County<br>Super. Ct. No. 18CV334671) |

Hieu Minh Nguyen (Nguyen), together with his wife and sister (defendants), seek reversal of the trial court's denial of their motion to set aside a judgment issued against them following discovery sanctions and summary adjudication.

Nguyen contends the trial court abused its discretion in denying the motion to set aside the judgment.  Nguyen maintains the evidence shows the underlying summary adjudication and sanction orders (imposed after the court found defendants failed to respond to discovery requests or participate in the litigation) occurred while he was detained and held a "virtual prisoner" in Vietnam, with no meaningful way to communicate with his California counsel or family members.  He asserts extrinsic fraud or mistake in the judgment and contends he and his codefendants should be given an opportunity to defend themselves on the merits.

Having carefully considered the record on appeal and the trial court's ruling, we conclude there was no abuse of discretion and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

The instant appeal involves one of several lawsuits between Quang Luong (Luong) and Nguyen arising from business deals in Vietnam and California. At least three of these lawsuits resulted variously in defaults, sanctions, and summary adjudications during the time Nguyen was detained in Vietnam.

After Nguyen's return to California, in March 2022, Nguyen filed a "motion to set aside default, default judgment, summary adjudications, charging orders, and discovery sanctions" in the three parallel cases (set aside motion). (Capitalization omitted.) The trial court ultimately denied the set aside motion in a written order (set aside order), giving rise in the instant action to the judgment at issue on appeal.

To understand the issues raised in this appeal, it is necessary to briefly describe the legal actions addressed in the set aside motion and set aside order. Our recitation of facts pertaining to the cases not currently before this court on appeal is for the purpose of providing background and context only and does not reach the merits of the legal issues involved.[1]

*A. Earlier Filed Actions*

1. QTV Action

The earliest filed action, *QTV Enterprise, LLC v. Hieu Minh Nguyen* (Super. Ct. Santa Clara County, 2017, No. 17CV310864) (QTV action), alleged breach of a loan agreement related to a business transaction between Nguyen and QTV Enterprise, LLC (QTV), an entity controlled by Luong.

---

[1] The earlier filed QTV and SSC actions, summarized *post*, are described in the trial court's set aside order and in the parties' briefs on appeal. However, the relevant pleadings and some orders from the actions are not part of the record on appeal. Our description of these actions is derived from the trial court's order on the set aside motion and from other information contained in the record.

As summarized in the trial court's set aside order, a $2.75 million loan from Luong to Nguyen in December 2012 allowed Nguyen to avoid foreclosure on the development of a shopping mall located in Sacramento, California. By 2017, after further transactions between Luong and Nguyen and modifications to the loan, QTV considered Nguyen to be in default and filed the complaint in this action. In November 2017, Nguyen filed a cross-complaint against QTV, Luong, Little Saigon Plaza Sacramento, LLC (Little Saigon), and additional entities allegedly controlled by Luong. Nguyen's cross-complaint asserted 11 causes of action including for accounting, breach of fiduciary duty, breach of contract, fraud, and conversion.

In a second amended cross-complaint following the sustaining of an earlier demurrer with leave to amend, filed in December 2017, Nguyen alleged that he was the sole manager and member of Little Saigon and that Luong had improperly transferred ownership interest in the shopping mall to himself. Luong responded by filing a cross-complaint in March 2019, asserting claims pertaining to the alleged breach of a business settlement agreement between Luong and Nguyen, dated September 15, 2016 (2016 settlement agreement).

In 2018,[2] while the QTV action was pending, Nguyen traveled to Vietnam and remained there until October 2021. We describe Nguyen's detention in Vietnam in more detail *post* (pt. I.C.1.).

During Nguyen's absence, QTV moved for summary adjudication of the complaint's second cause of action for breach of a promissory note in the amount of $4,268,744.54. Nguyen did not file opposition, though his counsel, Geoffrey William Steele (Steele), filed a notice of unavailability stating that Nguyen was in Vietnam and

---

[2] Defendants' briefs do not provide an exact date for Nguyen's trip to Vietnam but assert it occurred in October 2018. A declaration filed by Nguyen in a case he brought against Luong in December 2018 states that he traveled to Vietnam on December 2, 2018.

their communications were severely restricted.  In August 2020, the trial court granted QTV's unopposed motion for summary adjudication.  In November 2020, the trial court granted Steele's motion to be relieved as counsel of record.  In March 2021, the trial court granted an unopposed motion by cross-defendant Little Saigon for monetary sanctions and for discovery sanctions to deem admitted requests for admission.

In November 2021, shortly after Nguyen's return to the United States, Luong and related parties filed a motion for summary adjudication as to the first cause of action in Luong's cross-complaint for breach of contract, for summary adjudication as to all 10 causes of action in Nguyen's second amended cross-complaint, and for " 'entry of final judgment in favor of moving parties in this action.' " (Capitalization omitted.)  In March 2022, Nguyen filed opposition to the summary adjudication motion, and the moving parties filed their reply.  Shortly before the hearing on the motion, Nguyen filed his set aside motion in the QTV, SSC, and instant actions.  At a hearing on March 24, 2022, the trial court denied summary adjudication as to entry of final judgment in favor of Luong and the moving parties but deferred consideration of the other summary adjudication issues until after resolution of the set aside motion.  Ultimately, upon denying the set aside motion (discussed in detail *post* (pt. I.C.3.)), the trial court granted Luong's motion for summary adjudication as to the first cause of action in the cross-complaint and as to all 10 causes of action in Nguyen's second amended cross-complaint in the QTV action.

2.  SSC Action

*Quong Luong v. Hieu Minh Nguyen* (Super. Ct. Santa Clara County, 2018, No. 18CV326638) (SSC action) arises from the 2016 settlement agreement.  Luong alleged breach of the agreement, which Luong and Nguyen negotiated in 2016 to purportedly resolve various disputes concerning their business transactions in California and Vietnam.

Nguyen answered the complaint in the SSC action but failed to respond to discovery requests, which Luong propounded during Nguyen's detention in Vietnam.  In

4

March 2020, the trial court granted Luong's unopposed motion to compel and for monetary sanctions. Nguyen continued to be nonresponsive in the action, and on December 8, 2020, the court granted terminating sanctions against Nguyen, striking his answer. The court entered a default on September 28, 2021. In March 2022, Nguyen filed the set aside motion. As of the set aside order, judgment had not yet been entered in the SSC action.

### B. The Instant Action (Vector Action)

#### 1. Operative Complaint

The action presently on appeal, *Vector Fabrication, et al. v. Hieu Minh Nguyen, et al.* (Super. Ct. Santa Clara County, 2018, No. 18CV334671) (Vector action), arises from Nguyen's alleged default on a promissory note for a loan on an apartment building project in Ho Chi Minh City, Vietnam. Plaintiffs Vector Fabrication, Inc. (Vector) and Luong (together, plaintiffs) initially alleged breach of written contract and common count—money had and received—against Nguyen, related to Nguyen's alleged default on the note.

In June 2019, plaintiffs amended the complaint to add Nguyen's wife Quy Ngoc Thi Nguyen (Quy) and sister Nguyen Thi Thu Thao (Thao), the latter in her capacity as trustee of Nguyen's and Quy's insurance trust.[3] The amended complaint (hereafter, complaint) also added three causes of action for avoidance of fraudulent transfer related to the alleged, improper conveyance of defendants' residential property located in Granite Bay, California (see Civ. Code, §§ 3439.04, subds. (a), (b), 3439.05).

The complaint alleged that in 2014, Nguyen, who is a real estate developer, procured a loan of $1.85 million from plaintiffs to finance the development and construction of the Ho Chi Minh City apartment building project known as the " '116-

---

[3] The insurance trust is titled 2016 Nguyen Min Hieu [and] Nguyen Thi Ngoc Quy Insurance Trust (some capitalization omitted) and is referred to in the operative Vector complaint as the " '2016 Trust.' "

5

118 Bai Say Property.' " The loan was evidenced by a promissory note in the principal amount of $1.85 million in favor of plaintiffs, payable in installments between January and July 2015, and named the 116-118 Bai Say Property as security. The complaint alleged that despite plaintiffs' performance under the agreement and note, Nguyen failed to perform and refused to pay in accordance with the terms. It further alleged that the security for the note was valueless because Nguyen had "lost any ownership interest in the 116-118 Bai Say Property." Asserting breach of promissory note and common count, plaintiffs sought repayment of the $1.85 million promissory note, plus interest, attorney fees, and costs.

Plaintiffs further alleged, as to the causes of action for avoidance of fraudulent transfer, that Nguyen and Quy acquired title in September 2016 to residential real property in Granite Bay (the Granite Bay property, or property) as community property. After transferring title of the property from their insurance trust and back to themselves as community property, Nguyen and Quy allegedly executed a grant deed in December 2016 to transfer their ownership of the Granite Bay property to Nguyen's sister, Thao, as trustee, for no consideration.

Plaintiffs alleged that the transfer to Thao was voidable pursuant to Civil Code section 3439.04, subdivisions (a) and (b), because Nguyen and Quy made the transfer "with the actual intent to hinder, delay or defraud [] Nguyen's creditors" and intended to incur (or reasonably believed Nguyen would incur) "debts beyond his ability to pay as they became due." They further alleged the transfer was voidable pursuant to Civil Code section 3439.05, because at the time of the transfer Nguyen was insolvent or had become insolvent as a result of the transfer. Plaintiffs sought avoidance of the transfer "to the extent necessary to satisfy [p]laintiffs' claim in the sum of" the $1.85 million note plus interest, and among other remedies, injunctive relief preventing defendants from disposing of the property and requiring Thao as trustee to hold the property in trust for plaintiffs.

6

2. <u>Attachment Order, Discovery Sanctions, Summary Adjudication</u>

In June 2019, plaintiffs applied for a right to attach order and order for issuance of writ of attachment. Defendants, represented by Steele, filed opposition, including declarations signed by Steele and, purportedly, Nguyen. After a hearing in July 2019, the trial court denied, without prejudice, the application for a right to attach order. The court later granted a subsequent application for a right to attach order and writ of attachment, described *post*, which defendants did not oppose.

Plaintiffs moved for discovery sanctions based on defendants' failure to respond to discovery requests. In October 2019, the trial court granted plaintiffs' unopposed motion to compel answers to form interrogatories and further deemed admitted plaintiffs' requests for admission. In January 2020, the court granted another unopposed motion to compel responses to requests for production and imposed monetary sanctions.

Meanwhile, in December 2019, plaintiffs moved for summary adjudication on their first cause of action for breach of the $1.85 million promissory note. Defendants did not file opposition. There was no appearance by defendants at the February 2020 hearing. The trial court granted summary adjudication as to the first cause of action. It found that plaintiffs had met their initial burden of production as to the existence of the contract, performance, Nguyen's breach, and damages, and that having failed to oppose the motion, Nguyen "fails to raise a triable issue of material fact."

Thereafter, on March 10, 2020, the trial court granted additional discovery sanctions against Nguyen,[4] including terminating sanctions striking his answer to the amended complaint and monetary sanctions, for his "failure to respond to any of [p]laintiffs['] discovery requests and [] failure to comply with two prior [c]ourt orders compelling him to respond." (See Code Civ. Proc., § 2023.030, subds. (a), (d)(1).) Shortly after, Steele filed a "notice of unavailability" (capitalization omitted) pertaining

_____

[4] The trial court's minute order refers only to defendant Nguyen.

7

to Nguyen's ongoing absence from the litigation, which we describe in more detail *post* (pt. I.B.3.).

In August 2020, the trial court granted plaintiffs the right to attach order and order for issuance of writ of attachment based on defendants' interests in the Granite Bay property. The court found that plaintiffs had a right to attach property in the amount of $1.85 million upon the filing of an undertaking.

In October 2020, plaintiffs moved for summary adjudication on their third and fifth causes of action and sought "entry of final judgment" on their complaint. (Capitalization omitted.) In May 2021, after granting additional discovery and monetary sanctions against defendants in January 2021, the trial court granted the summary adjudication motion. Citing Nguyen's failure to respond to discovery requests and the sanctions striking his answer, the court found that plaintiffs had met their burden to show there were no disputed issues of material fact and no defense to their third and fifth causes of action for avoidance of fraudulent transfer. The court found that defendants "undertook the Granite Bay [p]roperty [t]ransfer with *actual intent* to hinder, delay, or defraud Mr. Nguyen's creditors and that [d]efendants are guilty of malice and oppression."

The trial court found that the prior grant of summary adjudication as to the breach of contract cause of action entitled plaintiffs to the principal amount of $1.85 million on the promissory note, plus fees and costs according to proof. It further found "double the amount of $1.85 million in compensatory damages in this case, or $3.7 million, is an appropriate measure of punitive damages in the circumstances," entitling plaintiffs to entry of judgment, jointly and severally, in the amount of $3.7 million. Plaintiffs dismissed the second and fourth causes of action, without prejudice, following summary adjudication of the other claims.

### 3. Notice of Unavailability and Motions To be Relieved as Counsel

On March 24, 2020, Steele filed a "notice of unavailability" of defendant and cross-complainant Nguyen (hereafter, notice of unavailability) and supporting declaration. (Boldface & capitalization omitted.) The notice of unavailability informed the trial court that Nguyen "has been and is being held by the Ministry of Public Security through the Office of Investigation Police and for the Socialist Republic of Vietnam" and has been instructed that he cannot leave the country until April 12, 2021. Steele filed a declaration in which he attached an English translation of the order issued by the Vietnamese Ministry of Public Security. Steele's declaration states, "Although it is my understanding that . . . Nguyen is not incarcerated, his ability to communicate with his counsel and family is severely restricted. I have not been able to communicate with my client in any meaningful way in several weeks and was only able to obtain a copy of this document[] through text photographing." Steele notes that Nguyen "is unavailable for all purposes" related to the action given that he (Steele) is "unable to transmit documents to" him and is "not at all certain that he is receiving anything I text or mail to him in the normal course of business."

In August 2020, Steele moved to be relieved as counsel for Nguyen. Steele's supporting declaration states, "Mr. Nguyen has not been in the United States for over two years now; he has been in Vietnam and he has failed to provide his counsel his date of return. Furthermore, Mr. Nguyen has ceased all communications with Mr. Steele since May of 2020 when he sent a brief text claiming he would be heading back to the United States 'sooner' but has not responded since. The only point of contact for Mr. Nguyen is a telephone number which he does not answer and for which texts go unresponsive. Mr. Steele has made numerous attempts to call and text Mr. Nguyen, however, to no avail. As such, Mr. Steele is unable to effectively represent Mr. Nguyen as Mr. Nguyen has failed to communicate with Mr. Steele for over [six] months."

Although Steele's motion to be relieved as counsel for Nguyen was uncontested, the trial court denied it without prejudice after Steele failed to file proof of service confirming service of the motion on the parties. Steele filed a renewed motion in January 2021 to be relieved as counsel for Nguyen. He separately moved to be relieved as counsel for Quy and Thao. His motions and supporting declarations explained that although Nguyen had hired him to represent Quy, she had refused to respond "to any communications either written or oral" including attempts by Steele to contact her at her residence in Granite Bay. Thao similarly had refused all communication and "has never made herself available for meetings, for deposition or even to answer the door of her residence to counsel." Steele further stated that Nguyen "has ceased all communications with [] Steele since May of 2020 when he sent a brief text claiming he would be heading back to the United States 'sooner' but has not responded since."

The trial court granted the motions for relief in April 2021, relieving Steele as counsel for Nguyen, Quy, and Thao.

### 4. Judgment

On May 26, 2021, the trial court entered judgment in favor of plaintiffs and against defendants, in the amount of $5.55 million as to Nguyen, and in the amount of $3.7 million against Nguyen, Quy, and Thao. The court ordered the February 6, 2017 transfer of the Granite Bay property to the trust to be set aside and declared void "to the extent necessary to satisfy [p]laintiffs' judgment" against Nguyen. The court further enjoined defendants from selling, transferring, or encumbering the property. The judgment provided for costs and attorney fees according to proof postjudgment. On July 9, 2021, plaintiffs filed notice of entry of judgment. Nguyen returned to the United States in October 2021 and eventually moved to set aside the orders and judgment.

## C. *Motion to Set Aside Judgment*

### 1. Set Aside Motion and Supporting Evidence

In March 2022, defendants each filed a substitution of attorney, naming Mark S. Rosen (Rosen) and Van T. Tran (Tran) as their joint counsel. On March 17, 2022, defendants filed the set aside motion that is the subject of this appeal.[5] The notice of motion cited Code of Civil Procedure sections 473 and 473.5, and the Constitutions of the United States and State of California, as authority for an order "setting aside the default and default judgment entered on May 28, 2021, any prior summary adjudications or motions, all discovery sanctions, and charging orders, and reinstate defendant's answer and cross-complaint."

The trial court granted plaintiffs' ex-parte motion to continue the hearing on the set aside motion to allow time for discovery on the motion.

The set aside motion sought to reverse the "astonishing deprivation of justice, both substantively and procedurally" that defendants claimed had occurred in the litigation. The motion asserted that while Nguyen was "a prisoner" in Vietnam and "frivolously detained by powerful political forces at the highest levels of government" based on charges instigated by Luong, Luong "ran wild through the court system" to ultimately obtain "inconsistent recoveries" in the QTV, SSC, Vector, and other actions.[6] Defendants contended that plaintiffs were able to obtain the various defaults and discovery sanctions due to Nguyen's detention in Vietnam, where he was continuously

---

[5] Concurrent with the set aside motion in this case, Nguyen filed "virtually identical" set aside motions in the QTV and SSC actions. The three actions, which had proceeded for several years before different judges and in different departments of the Santa Clara County Superior Court, were reassigned and continued so the motions could be heard by a single judge. The judge assigned to the set aside motions in the three cases noted a fourth action between Luong and Nguyen also pending in Santa Clara County Superior Court that is not subject to the set aside motion.

[6] The set aside motion referred to a fourth action filed by QTV against Nguyen, Quy, and Thao, in the Santa Clara County Superior Court in October 2020, that was not subject to the set aside motion.

11

interrogated, beaten, hospitalized, and deprived of any means to communicate with counsel or even his wife. Defendants argued, citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975 (*Rappleyea*) and other case authority, that even if the time for statutory relief has passed, courts may vacate a judgment on equitable grounds, including the excusable neglect of the defaulting party to appear and present his claim or defense.

Defendants filed declarations in support of the set aside motion, including the declaration and supplemental declarations of Nguyen, and declaration of Rosen.

The declaration of Rosen set forth his professional background as a practicing attorney in civil practice and the experience of his cocounsel Tran. Rosen summarized the allegations and procedural histories in each of the four cases involving Luong and Nguyen, including the status of and basis for the summary adjudications and discovery sanctions. Rosen stated in each case that QTV and Luong propounded discovery "knowing that [] Nguyen would be unable to respond to the discovery," laying the groundwork for subsequent motions for summary adjudication and/or for terminating sanctions based on orders deeming admitted requests for admissions. Rosen described how Luong had succeeded in obtaining defaults "by parsing the larger transaction" between the parties "into smaller bits." For example, Rosen asserted that by limiting allegations in the Vector action to the promissory note and Granite Bay property transfers, Luong succeeded in obfuscating those transactions from the larger context of business associations between the parties—especially including the 2016 settlement agreement (which Nguyen maintains superseded the promissory note) and Nguyen's alleged repayment of the note by granting Luong 50 percent ownership in a luxury condominium in Ho Chi Minh City, Vietnam.

In his declaration, Nguyen described his personal history immigrating to the United States from Vietnam, obtaining United States citizenship, his business history with Luong, and Luong's pattern of lawsuits against Nguyen despite efforts to settle their

12

business differences. Nguyen also set forth the details of his 2018 trip to Vietnam and the investigations and proceedings against him.

Nguyen declared that after arriving in Vietnam in mid-2018 on a business visa for what he had intended to be "a short trip," the Ho Chi Minh City police detained and interrogated him based on a false complaint, initiated by Luong, that Nguyen had misappropriated over $7 million. The police froze Nguyen's passport and travel documents. Although the local police investigation resulted in an October 2018 report declaring Nguyen innocent,[7] Nguyen's case was referred to the Ministry of Public Security (Ministry) in January 2019 for further investigation. Nguyen asserted that family relationships connecting Luong to important officials in the Vietnamese government, including the Prime Minister, gave Luong influence over the Ministry's actions. Notwithstanding his status as a United States citizen, Nguyen asserted that the Ministry's orders prevented him from leaving Vietnam while the investigation was ongoing.

On April 12, 2019, the Ministry issued a "Temporary Postponement of Exit Decision" (exit suspension order) precluding Nguyen from departing Vietnam. (Some capitalization omitted.) The exit suspension order provided for a period of temporary postponement of exit from April 12, 2019, to April 12, 2021. The Ministry identified a pending criminal complaint, noting Luong as the complaining party and alleging tax evasion and financial misappropriation. Nguyen was subject to summons and search warrants (translated copies of which he attached to the declaration) that he declares resulted in the confiscation of his records, computers, personal documents, and phones.

Nguyen stated that he was summoned daily for interrogations that would "last all day, sometimes late into the night" and on weekends, during which he was forced to

---

[7] Neither party addresses the seemingly incongruent timing of this document, dated October 18, 2018, which appears to predate Nguyen's December 2018 arrival in Vietnam.

recount his personal history and business activities and was pressured to confess to various crimes. Nguyen stated there were times he was physically beaten by security personnel who kicked him with metal tipped boots, used electric prods, and on multiple occasions attached electrodes to his genitals. Nguyen declared that he suffered a stroke or "facial palsy" in mid-2020 due to the beatings and mistreatment and was admitted to the hospital for the first of what became four hospitalizations. Nguyen attached photographs to the declaration showing bruises to his stomach and swollen appendages. Nguyen asserted that the police interrogations continued while he was hospitalized, depriving him of the ability to rest and recover. In October 2020, Nguyen filed a complaint and petition with the Ministry seeking to end the civil case against him and referring to a complaint filed in August 2020 against the police agency (translated and copied as an attachment to the declaration).

In January 2021, the Ministry issued a decision suspending the criminal complaint against him and rescinding the exit suspension order. Nguyen declared that, notwithstanding this decision, he was told additional charges would be filed if he tried to leave the country. He asserted that he continued to be followed and his phone calls monitored, and he feared that the COVID-19 pandemic would be used as a pretext to take him into custody and declare he had tested positive for COVID-19 and died of the virus. A former senior government official eventually helped him move into a gated, secure community inhabited by foreign officials and their families. Nguyen stayed "secluded and behind locked doors for [nine] months" without a computer and aware that his cell phone was being monitored by the Ministry police. Nguyen devised a complex plan to leave the country. In October 2021, he succeeded in boarding a flight to the United States and reunited with his family.

Nguyen declared that "during the entire period that I was being investigated, interrogated, monitored and followed, I was not able to have regular access to a computer or phone line, which greatly inhibited my ability to work with a US attorney or anyone in

14

the US to fend off all the legal problems that [] Luong threw at me. Although I was not being incarcerated in a jail cell in the traditional sense, I was in fact, being detained and prevented from freely using the computer or cellphone without being hacked or monitored by security police, and [could not] leave the country since my US passport was confiscated."

Regarding the California actions, Nguyen declared that he had not received any papers related to the cases while in Vietnam, received no mail from the United States, and though he had a cell phone, all telephone calls were monitored. He was not able to contact his wife, who does not understand English or the American legal system, and he never met Steele or signed any paperwork with him. Nguyen explains that his attorney at the beginning of the cases, Alex Park (Park), had told him he would find an attorney to represent him and found Steele, but that Nguyen never received any documents from Steele, nor did he ever sign a declaration for him, and that any purported signature of his appears to be forged.

In his declaration, Nguyen also disputed the merits of the underlying cases. He asserted that if given the opportunity, the facts and evidence would show that through the course of several projects and business dealings in Vietnam, as well as the 2016 agreement attempting to settle their disputes, Nguyen owes nothing to Luong and properly obtained title to the Granite Bay property—deeded by Luong. Nguyen asked the court for the opportunity to defend himself and have his day in court by setting aside "all judgments, all discovery orders that deem admissions admitted that [he] never had a chance to respond to, and all levies and writs of execution" so there can be an outcome on the merits "and not by legal technicalities and circumstantial ambush." Nguyen's declaration additionally stated that he is not fluent in English and has reviewed the declaration with Tran.

In his supplemental declaration, Nguyen provided additional details about the physical abuse and hospitalizations, which occurred between April 2019 and January

15

2021.  Nguyen explained that his only contact with Steele occurred in 2018 over the telephone when Nguyen was already in Vietnam.  Park, who purportedly could not represent Nguyen due to a conflict based on having previously served as Luong's transactional attorney, introduced Nguyen to Steele during that phone call.  Nguyen reiterated that he was unable to communicate freely while he was in Vietnam.  He asserted that he never received any legal papers from Steele and had no knowledge of what was taking place in the California court cases.  He stated that he could not even talk with his wife Quy about the circumstances he faced, since she was already overburdened taking care of their four minor children (ages 14, 13, 9, and 7) during the three years that he was held in Vietnam.

2. Opposition To Set Aside Motion

Plaintiffs filed opposition to the set aside motion.  Plaintiffs argued that the motion could be denied on the notice of motion alone, which misidentified the challenged orders as " 'the default and default judgment entered on May 28, 2021' " and otherwise referred vaguely to " 'any prior summary adjudications or motions, all discovery sanctions, and charging orders, and [to] reinstate defendant's answer and cross-complaint."

On the merits, plaintiffs argued that defendants "failed to satisfy their burden to prove they are entitled to this extraordinary equitable relief . . . as there is zero credible evidence that Nguyen's alleged detention in Vietnam from December 2019 to October 2021 resulted in his or [d]efendants' inability to communicate with anyone in the US, including their litigation attorney" Steele, or Nguyen's personal attorney, Park, "who assisted and conversed with Steele and represented Nguyen" in other cases and before the Court of Appeal, Sixth Appellate District, during that time period.[8]  Plaintiffs asserted

_____

[8] In April 2022, this court filed an unpublished decision affirming a September 2019 order of dismissal in another Santa Clara County Superior Court case involving Nguyen.  (*Nguyen v. Little Saigon Plaza, LLC* (Apr. 29, 2022, H047449) [nonpub. opn.] (*Little Saigon Plaza*).)

16

that the evidence showed not that Nguyen was *unable* to communicate, as claimed in the set aside motion, but that he *failed* to communicate with his California counsel to request a continuance or stay of the proceedings. They argued that defendants also failed to provide any legal authority to support their request for extraordinary relief. They noted that Code of Civil Procedure section 473.5, cited in the notice of motion, has a strict six-month time limit and pertains to relief from entry of default or default judgment, though neither occurred in this case. Instead, plaintiffs asserted that defendants were relying on purely equitable principles for relief but provided no discussion or analysis demonstrating application of the grounds for relief from judgment based on extrinsic fraud or mistake.

In support of their opposition, plaintiffs submitted the declaration of their attorney Ruben P. Ruiz (Ruiz) and the declarations of Luong and Pham Thi Thanh Huyen (Huyen), plaintiffs' attorney in Vietnam who represented them in an October 2018 civil case against Nguyen. Plaintiffs also filed a request for judicial notice in support of their opposition, including for the register of actions and certain filings and orders in the pending actions between the parties, the unpublished opinion of this court in *Little Saigon Plaza*, and copies of the online news sources cited in the Ruiz declaration regarding Nguyen's public appearances during his purported detention.

Ruiz's declaration provided a detailed timeline of plaintiffs' court filings, meet and confer attempts, discovery motions, and motions for summary adjudication and/or terminating sanctions across the Vector, QTV, and SSC actions, which preceded Steele's filing of the notice of unavailability in March 2020. Ruiz stated that evidence from Steele and Park, based on their depositions and privilege logs, shows they communicated with Nguyen several times at least until July 2019, with Park serving as the intermediary due to the language barrier between Steele and Nguyen. According to Ruiz, Steele testified that his communications with Nguyen and documents received came through Park, and that Park informed him on " 'ha[lf] a dozen times,' he was having difficulty contacting [] Nguyen." Park also testified that he could communicate with Nguyen

17

through a communication application called Viber and did so on one to two occasions during the alleged detention. Further, Quy testified in deposition that Nguyen called her three or four times during the period he was in Vietnam.

Ruiz's declaration identified various instances of Nguyen's participation in the ongoing legal proceedings. Regarding Nguyen's signed declaration in opposition to the writ of attachment, Ruiz pointed out that Steele testified he obtained the information for Nguyen's declaration through Park, and that Park provided Steele with a signed copy of the declaration containing Nguyen's signature dated July 10, 2019, which Steele had no reason to believe had been forged.[9] Ruiz stated that Nguyen's signature also appears on a signed letter from November 2020 authorizing the withdrawal and payoff of certain liens to facilitate a sale of the Granite Bay property, demonstrating that Nguyen could receive and transmit documents during that time. Ruiz stated that while court filings (including case management conference and mediation statements) from August and October 2019 in the Vector action and other actions informed the trial court that Steele had not spoken with Nguyen for several weeks and that Nguyen was " 'being held in the Republic of Vietnam and [wa]s unable to travel,' " there was no indication from Steele that he was entirely unable to communicate with Nguyen.

Ruiz declared that during the time in question, Nguyen attended numerous public groundbreaking and contract signing ceremonies in Vietnam. He asserted that Nguyen's filing in November 2019 in Vietnam of a petition to stop the civil case pending against him also included an affidavit signed by Nguyen at the United States Consulate General in Ho Chi Minh City on May 23, 2019. Although Nguyen argued in the petition that the civil case against him should be suspended because it involved the same dispute as the

---

[9] Regarding the filing of Nguyen's declaration in opposition to the writ of attachment in July 2019, Park testified that Nguyen sent him via text a document in Vietnamese with instructions to forward to Steele. Park also spoke to Nguyen about the declaration in opposition to the writ of attachment, which Nguyen told him to " '[s]ign for me.' "

claims pending in the SSC action, he did not mention that he was detained or unable to communicate with counsel to defend himself in the SSC action.

Ruiz pointed out that the March 2020 notice of unavailability represented the first time he received notice or obtained a copy of the exit suspension order, which had been issued more than 11 months earlier. Steele's subsequent requests to be relieved as counsel, filed in August and December 2020, indicated only that Nguyen had ceased to respond to communications. Steele did not seek a stay of the actions or otherwise seek reconsideration or relief from any of the trial court's rulings up to that point. Ruiz asserted that Steele's request for relief as counsel without seeking a stay of proceedings or other relief from orders suggests he "did not believe he had a good faith basis to seek a stay or continuance on behalf of his client."

Ruiz declared that in the absence of any request for stay or continuance, he continued to diligently prosecute his clients' claims in the Vector and other actions. Ruiz summarized the trial court orders and rulings entered after Steele's withdrawal as counsel and after the January 2021 Ministry decision rescinding the exit suspension order. According to Ruiz, Nguyen at that time was no longer subject to exit restrictions but did not return to the United States until October 2021, by which time plaintiffs' writ of attachment had been recorded and the trial court had granted plaintiffs' motion for summary adjudication on the third and fifth causes of action.

The Huyen declaration explained that in October 2018, plaintiffs brought a civil action against "Nguyen's companies" (naming several companies not relevant here) in the People's Court of Ho Chi Minh City (Vietnamese civil case). Huyen explained the allegations in the Vietnam civil case, the related police investigation, and Nguyen's responsive filings and appearances in that case. Huyen also described the Ministry's initiation of a criminal case and investigation in April 2019, according to the documents attached to the Nguyen declaration in support of the set aside motion. Huyen described several meetings that he attended, together with Nguyen and Nguyen's Vietnamese

19

counsel, including in May and August 2019, at which time Huyen observed that Nguyen "appeared to be in good health" and was in possession of a cell phone. Huyen also appended to his declaration Nguyen's petition in November 2019 to stop the Vietnamese civil case, which included the copy of the complaint against Nguyen in the SSC action, as certified by affidavit at the U.S. Consulate General in Ho Chi Minh City.

In sum, plaintiffs argued that defendants had failed to provide legal or factual support for their set aside motion. They pointed to the numerous inconsistencies and contradictions between defendants' assertion that he had *no* ability to communicate and the evidence showing *infrequent* communications. They also asserted that Nguyen was not diligent in pursuing the set aside motion, which was filed five months after his October 2021 return to the United States, and that regardless of the evidence as to Nguyen, the set side motion failed to provide any evidence in support of setting aside the judgment as to defendants Quy and Thao.

Defendants filed a reply in support of the set aside motion, including an additional declaration by Nguyen. Defendants argued that plaintiffs' opposition evidence confirmed the "extremely limited communications that . . . Nguyen was able to have with his attorneys or his family" and demonstrated that plaintiffs knew, at the same time their counsel Ruiz was moving for discovery sanctions and bringing motions, that it was Luong's complaint that led to Nguyen's detention in Vietnam and inability to defend himself in the California actions. Defendants cited extensively to Park's deposition testimony, in which Park described his limited communications with Nguyen, each of which lasted " 'between 30 seconds to a minute' " and which ended abruptly with Nguyen warning that they were being listened to and hanging up. On one occasion, Park testified that he and Nguyen were cut off by what sounded like third party interference.

Defendants also cited to the deposition testimony of Quy. Quy was in a state of depression and shock during her husband's absence, as she could not read or speak English, struggled to support and care for their children without any means of income,

20

did not understand any of the documents pertaining to the Granite Bay property transactions, and over several years was able to speak to her husband only three or four times for brief intervals before they were disconnected. Defendants contended that plaintiffs' conduct in pursuing the case despite their awareness of Nguyen's inability to defend against their claims "is the essence of extrinsic fraud on the court."

### 3. Order Denying Set Aside Motion

The trial court heard argument on the set aside motions in all three actions and the motion for summary adjudication in the QTV action. Defendants' counsel emphasized the evidence cited in their reply brief, including that attorney Park acknowledged signing certain declarations on behalf of Nguyen, thus supporting defendants' position that Nguyen was not aware of what was happening in the California cases and was not receiving the relevant documents. Counsel argued that although there were limited phone conversations between Park and Nguyen, as well as between Nguyen and Quy, the evidence showed that the conversations lasted only a few seconds before being interrupted or cut off. Counsel argued that regardless of the extent to which the trial court credited Nguyen's belief that he was being persecuted by elements of the Vietnamese government, "[t]he basic facts are that he was unable to communicate with his attorneys. He was unable to receive or send items pertaining to these cases" and "that's all backed by the evidence and depositions."

On August 1, 2023, the trial court issued a written order denying the set aside motion. The court listed multiple reasons for denying the motion, which it categorized as (1) failure of evidence, (2) failure of procedure, and (3) failure of credibility.

As to the sufficiency of the evidence, the trial court found the set aside motion lacked first-hand evidence of the circumstances of Nguyen's detention. It found the factual allegations in the set aside motion, and particularly in Nguyen's declaration and supplemental declaration, were "incompetent and inadmissible." The court noted that the copies of translated documents submitted by Nguyen as attachments to his declaration did

not include the originals or certificates of translation as required by Evidence Code sections 751 and 753. The court observed that Nguyen's declaration relied heavily on inadmissible hearsay regarding Luong's political connections and the Ministry's purported threat to file additional charges against Nguyen if he tried to leave the country.

The trial court further found that the set aside motion was procedurally deficient. It noted that defendants did not identify the specific orders in each action that they sought to vacate. The court found that defendants failed to explain how the statutory provisions cited as a basis for the motions (Code Civ. Proc., §§ 473, 473.5) applied in the circumstances and did not support their assertion for entitlement to equitable relief based on extrinsic fraud or mistake.

The trial court lastly found that, even if it overlooked the aforementioned flaws, defendants' arguments in support of the set aside motions were "implausible and unpersuasive." It explained, "Rather than provide specific details that would enhance the credibility of the motions, Nguyen's declarations are characterized by vague and equivocal statements regarding his detention in Vietnam. He says he was 'detained,' but he admits he was *never incarcerated*. [Citation.] He does not say that he had *no* access to a computer and phone, only that he lacked 'regular access' to them. He does not say that he was *unable* to contact his attorneys in the U.S., only that he had 'no meaningful or regular access to communicate with the U[.]S.' [Citation.] He does not identify specific dates, and he exaggerates the hardships he endured, including the outlandish statement that he was interrogated 'every day' for two and a half years, even though he was permitted to go home every night."

The trial court contrasted Nguyen's statements with those set forth in the Huyen declaration, which the court found contained "specific details that refute Nguyen's allegations." It found that even assuming the truth of Nguyen's allegations that he was unable to leave Vietnam and was subjected to repeated interrogations by police and investigated for tax and financial crimes, and that he was physically mistreated and had to

22

be hospitalized, "the court still cannot accept the proposition that during these three years, he was unable to communicate with the outside world and get in touch with his U.S. lawyers or his family, *even if only sporadically*" or through his two Vietnamese attorneys." As an example, the court cited Nguyen's references to the forged declaration, noting that "[b]ecause he did not remember authorizing one of his U.S. attorneys to sign a declaration on his behalf, Nguyen immediately jumped to the conclusion that his attorney submitted a 'forged' document in this court . . . . This type of thinking, borne of a willingness to jump immediately to the most preposterous conclusions without any basis, characterizes this motion as a whole, which is founded upon speculation and unfounded conspiracy theories, rather than actual evidence."

The trial court concluded, "While it may well be the case that Nguyen did not communicate with his attorneys, or even his wife, from 2019 to 2022, the lack of communication is not proof that he was *unable* to do so. On the contrary, all indications are that Nguyen chose not to do so, given the other things that were going on for him in Vietnam."

### D. Motions for Reconsideration and Appeal

On August 14, 2023, defendants moved for reconsideration of the set aside motion in all three actions. Among other grounds for reconsideration, defendants asserted that in denying the set aside motion, the trial court had failed to consider the evidence submitted by Nguyen—in particular, his third declaration filed in connection with his reply brief— and had failed to consider the significant risk of inconsistent judgments created by the piecemeal nature of the actions. Plaintiffs filed opposition to the motions for reconsideration.

23

On September 28, 2023, while the motion for reconsideration was pending, defendants filed their notice of appeal in this action.[10]  The trial court's denial of a motion to vacate or set aside an order and/or judgment on statutory or equitable grounds is appealable under Code of Civil Procedure section 904.1, subdivision (a)(2) as an order made after final judgment.  (See *Shapell Socal Rental Properties, LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 207, fn. 2 (*Shapell*); *Rappleyea*, *supra*, 8 Cal.4th at pp. 981–982.)

## II.  DISCUSSION

This complicated factual and procedural history gives rise to a single question on appeal:  whether the trial court abused its discretion in denying the set aside motion.  We conclude, based on the entire record and relevant legal standards, that it did not.

---

[10] The trial court proceeded to hearing and decision on the motions for reconsideration in the QTV and SSC actions, which it denied in a written order dated January 9, 2024 (order denying reconsideration), noting that the appeal in the Vector action divested it of jurisdiction to decide the motion for reconsideration in that action.

In a motion to augment the record filed on June 7, 2024, plaintiffs requested that this court augment the record on appeal with the order denying reconsideration (as well as augment to correct an inadvertent omission from the record of a declaration filed in the trial court in opposition to the set aside motion).  Plaintiffs concurrently filed a request for judicial notice asking this court to take judicial notice of the order denying reconsideration.  This court granted the motion to augment the record to correct the inadvertent omission of the Ruiz declaration but denied the motion as to the order denying reconsideration.  It deferred the request for judicial notice for consideration with the appeal.

Turning to the request for judicial notice, plaintiffs acknowledge that the order denying reconsideration was issued after an appeal was taken in this action and that the trial court correctly noted the appeal divested it of jurisdiction over the motion for reconsideration in the Vector action.  Nevertheless, plaintiffs contend the trial court's order denying reconsideration as to the QTV and SSC actions is relevant, since the court addressed several factors that defendants now contend on appeal were overlooked.

We deny the unopposed request for judicial notice.  While this court may take judicial notice of the records of any court of this state (Evid. Code, §§ 459, subd. (a), 452, subd. (d)), we decline to do so where the trial court no longer had jurisdiction over the motion in the matter before us.  Further, we have determined that the trial court's ruling on the motion for reconsideration is not relevant to our resolution of the appeal.

## A. *Standard of Review*

The parties agree that the standard of review of the denial of the set aside motion is abuse of discretion. In arriving at this standard, defendants rely on cases pertaining to statutory motions to set aside defaults and default judgments. (See, e.g., *Shapell*, *supra*, 85 Cal.App.5th at p. 212.) Plaintiffs note that motions based on equitable considerations, such as extrinsic fraud or mistake, are subject to the same standard of review. (See, e.g., *Rappleyea*, *supra*, 8 Cal.4th at p. 981.)

We agree with plaintiffs that the California Supreme Court's articulation in *Rappleyea* of the standard of review in cases involving a motion to vacate a judgment on equitable grounds governs our review. There, an error by the clerk's office led to the entry of a default and default judgment against the self-represented defendants. (*Rappleyea*, *supra*, 8 Cal.4th at p. 978.) The defendants appealed from the default judgment. (*Id*. at p. 980.) Our high court noted that whereas statutory relief from the default under Code of Civil Procedure[11] section 473[12] was unavailable based on the timing of the default, "a trial court may still vacate a default on equitable grounds even if statutory relief is unavailable." (*Rappleyea*, at p. 981.) The court held that, on appeal, the reviewing court applies the same abuse of discretion standard to an order denying a motion to vacate on equitable grounds as it would a decision under section 473. (*Ibid*.)

---

[11] All further unspecified statutory references are to the Code of Civil Procedure.

[12] Section 473, subdivision (b) "contains two distinct provisions for relief from default." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.) The first provision, which is "discretionary and broad in scope" (*ibid*.), authorizes relief "from a judgment, dismissal, order, or other proceeding taken against [a party] through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) The statute requires that any application for relief under that section be made within six months after the judgment, dismissal, or order and "accompanied by a copy of the answer or other pleading proposed to be filed therein." (*Ibid*.) The second provision for relief is mandatory, covers only default judgments and defaults that will result in the entry of judgments, and must be based on attorney fault. (*Even Zohar*, at pp. 838–839; see § 473, subd. (b).)

In this case, defendants ostensibly brought the set aside motion pursuant to section 473[13] "and the Constitutions of the United States and the State of California." However, as in *Rappleyea*, statutory relief under section 473, subdivision (b) was unavailable to defendants. Among other reasons, defendants' set aside motion was untimely, filed over six months after the May 2021 entry of judgment and more than a year after the various summary adjudication, sanctions, and attachment orders. Nevertheless, under *Rappleyea*, a court may vacate a default (or "a judgment, dismissal, order, or other proceeding" as listed in section 473) on equitable grounds. (*Rappleyea*, *supra*, 8 Cal.4th at p. 981.) We review the trial court's decision to deny the requested relief for an abuse of discretion. (*Ibid.*)

Under the abuse of discretion standard, we examine the trial court's legal conclusions de novo and its factual conclusions for substantial evidence. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) We may reverse the trial court's application of the law to the facts for an abuse of discretion only if we find that the court acted in an arbitrary and capricious manner. (*Id.* at p. 712.)

In reviewing the trial court's findings for substantial evidence, we consider all the evidence in the light most favorable to the prevailing party, " ' "giving them the benefit of every reasonable inference and resolving all conflicts in their favor." ' " (*Hudson v. Foster* (2021) 68 Cal.App.5th 640, 661 (*Hudson*).) We will not set aside a finding based on a reasonable inference " ' "unless it appears that the inference was wholly irreconcilable with the evidence. [Citations.]" [Citation.] "[W]hen the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal." ' " (*Ibid.*)

---

[13] While the notice of motion listed both sections 473 and 473.5 as the basis for relief, we focus our discussion on section 473, since there is no indication in the record or the parties' arguments to the trial court or on appeal that section 473.5 has any application in this case.

Furthermore, "[a] reviewing court 'cannot determine whether a trial court has acted irrationally or arbitrarily . . . without considering the legal principles and policies that should have guided the court's actions.' " (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 709.)  " 'If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.  [Citation.]  Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' [Citation.]  Simply stated, 'an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard.' " (*Ibid.*)

### B.  *Legal Principles*

"After the time for requesting statutory relief under section 473 has passed, the court may set aside the default and judgment on equitable grounds." (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 (*Manson*).)  Courts describe the grounds for equitable relief from default (or other applicable order) in terms of extrinsic fraud or mistake.  "The terms extrinsic fraud and extrinsic mistake have been interpreted broadly, encompassing 'almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing.' " (*Hudson*, *supra*, 68 Cal.App.5th at p. 664.)  Nevertheless, "[t]o the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857.)  "Thus, a party who seeks to have a default set aside under a court's equity power must make a stronger showing than is necessary to obtain relief under section 473." (*Gribin Von Dyl & Associates, Inc. v. Kovalsky* (1986) 185 Cal.App.3d 653, 660.)

Extrinsic mistake is "a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea*, *supra*, 8

Cal.4th at p. 981.)  This occurs when "the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense.  If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present." (*Manson*, *supra*, 176 Cal.App.4th at p. 47, citing *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 (*Kulchar*).)  Examples of extrinsic mistake include " '[r]eliance on an attorney who becomes incapacitated, or incompetence of the party without appointment of a guardian ad litem.' " (*Heyman v. Franchise Mortgage Acceptance Corp.* (2003) 107 Cal.App.4th 921, 926 (*Heyman*).)

"Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " (*Kulchar*, *supra*, 1 Cal.3d at p. 471.)  Extrinsic fraud occurs when a party's fraud or deception has prevented the unsuccessful party from fully litigating their case, such as " 'by keeping [the opponent] away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff.' " (*Ibid.*; *Manson*, *supra*, 176 Cal.App.4th at p. 47.)  By contrast, " '[f]raud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so.' " (*Heyman*, *supra*, 107 Cal.App.4th at p. 926.)

In *Rappleyea*, our high court recognized a "stringent three-part formula" employed by appellate courts to evaluate a claim for equitable relief based on extrinsic mistake or fraud.  (*Rappleyea*, *supra*, 8 Cal.4th at p. 982.)  The party seeking to set aside a judgment based on extrinsic mistake or fraud " 'must satisfy three elements. First, the defaulted party must demonstrate that it has a meritorious case.  Second[], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the

original action.  Last [], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.' " (*Ibid.*)

A party seeking relief on either of these grounds "must demonstrate diligence in seeking to set aside the default" or other order once it has been discovered.  (*Manson*, *supra*, 176 Cal.App.4th at p. 49.)  Moreover, due to the strong public policy in favor of the finality of judgments, once there is a *judgment* and the six-month period for statutory relief has passed, relief "may be given only in exceptional circumstances."  (*Rappleyea*, *supra*, 8 Cal.4th at p. 981.)  Limiting relief to exceptional circumstances serves "to accommodate both the policy in favor of resolving issues in a final judgment and the policy in favor of a fair adversary proceeding in which each party is provided an opportunity to fully present its case."  (*Estate of Sanders* (1985) 40 Cal.3d 607, 614 (*Estate of Sanders*).)

*C.  Analysis*

Defendants contend that Nguyen "made a sufficient showing to justify setting aside the defaults" (capitalization & boldface omitted) under these standards, and the trial court abused its discretion by failing to give "proper consideration" to the evidence.  The record belies these arguments.

As an initial matter, neither the set aside motion, nor defendants' briefs on appeal, articulate precisely what legal authority or theory of relief applies, nor how it applies to the components of the judgment from which defendants seek relief.  Instead, the set aside motion purports to seek relief from "all rulings constituting a decision on the substance of the case, including deeming requests for admissions to be admitted."  Defendants' failure to specify the legal authority for reversing certain orders underlying the judgment and to tailor their arguments accordingly is itself problematic.  As an example, the set aside motion purports to include within its scope the deemed admissions.  However, the grounds for withdrawal or amendment of an admission are statutorily prescribed.  (See § 2033.300; *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1418.)

29

Defendants have not addressed the statutory grounds nor stated any specific legal authority in support of the request for relief that would apply to the deemed admissions that undergird subsequent orders in the case.

When an appellant asserts a point on appeal " 'but fails to support it with reasoned argument and citations to authority' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862), this court may treat the point as forfeited. Although we decline to deem the matters embraced within the appeal as forfeited, defendants' failure to identify with more particularity the relevant legal authority applicable to the broad swath of relief encompassed in the set aside motion is emblematic of the shortcomings in their briefing on appeal.[14] As to the request for relief more generally, defendants appear to suggest that both extrinsic mistake and fraud, or possibly some combination, unfairly prevented adjudication on the merits. They assert, without citation to supporting evidence in the record, that "Quang Luong was not an innocent bystander. He was the one who initiated the accusations that led to Hieu Nguyen's detention. The trial court gave this no weight, but Quang Luong *admitted* that he had initiated the proceedings. Quang Luong actually hired a private lawyer to pursue his claims in Vietnam. None of Hieu Nguyen's troubles with the criminal authorities in Vietnam would have happened without the active involvement of Quang Luong. [¶] It was after Hieu Nguyen was detained in Vietnam that Quang Luong began his barrage of discovery and motions. Even if Quang Luong did not cause Hieu Nguyen to be detained, he certainly took advantage of it."

These arguments suggest some form of extrinsic fraud based on Luong's alleged influence over the civil and criminal investigations or proceedings against Nguyen in

---

[14] Defendants' appellate briefing in many instances also fails to comply with the applicable court rules for supplying appropriate record citations. (Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring each appellate brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) Many factual references in defendants' briefs are devoid of record citations or refer to the original document (i.e., "Declaration, ¶7"), but fail to cite to the place in the clerk's transcript where the document or reference appears.

Vietnam for the purpose of fraudulently preventing him from defending against plaintiffs' claims in this case. (See *Kulchar*, *supra*, 1 Cal.3d at p. 471; *Hudson*, *supra*, 68 Cal.App.5th at p. 664.) Defendants likewise suggest, implying extrinsic mistake based on outside circumstances, that Nguyen's declarations in support of the set aside motion "show that he was unable, in any practical sense, to respond to these lawsuits once he was detained." ~(AOB 45)~ Defendants point to the deposition testimony of Steele and Park, which they maintain confirmed that neither attorney was able to have meaningful communication with Nguyen while he was in Vietnam. They contend, apparently in reference to the three-part test for evaluating a claim for equitable relief, that Nguyen presented evidence that he had a meritorious defense. For example, they argue that the 2016 settlement agreement "is uncontested written evidence that there was a meritorious defense which cast into doubt any action based on earlier promissory notes." They also assert that Nguyen "acted diligently" in seeking to set aside the defaults, since he returned to the United States and filed the set aside motions "within one week of substituting in his attorneys."

These arguments fail to address the trial court's specific findings and their bases in the record. The trial court found that defendants did not submit competent or credible evidence in support of Nguyen's sweeping assertions that the proceedings and investigations against him during his time in Vietnam entirely precluded him from communicating with his California counsel or even his family members. Specifically, the court found that while Nguyen was under investigation by the authorities in Vietnam regarding potential tax evasion and financial misappropriation and simultaneously was engaged in a Vietnamese civil lawsuit over his business dealings with Luong, his "claims of being regularly interrogated, beaten, kicked, and electrocuted—and of having been prevented from communicating with others *for years*—strain credulity." Indeed, the court referred to those findings (made by another bench officer in granting the unopposed motion for summary adjudication in favor of plaintiffs in the QTV action) in which the

31

trial court observed that the notice of unavailability " 'was rather vague on why communications were restricted' " and the claim that counsel could not communicate in any form with Nguyen was " 'difficult to believe.' " The trial court echoed those observations and emphasized it found Nguyen's explanation for his inability to communicate with counsel "even more far-fetched in the present day."

Contrary to defendants' contention that the trial court failed to consider the translated documents or Nguyen's third declaration—filed in connection with defendants' reply in support of their set aside motion—the court stated that it had received the documents and considered them. The court nevertheless found the evidence insufficient to substantiate Nguyen's claim that he was unable to communicate with the outside world for three years. It concluded, "[w]hile it may well be the case that Nguyen did not communicate with his attorneys, or even his wife, from 2019 to 2022, the lack of communication is not proof that he was *unable* to do so. On the contrary, all indications are that Nguyen chose not to do so, given the other things that were going on for him in Vietnam."

Substantial evidence in the record supports the trial court's determination. Setting aside defendants' initial reliance on translated documents bearing no certification of authenticity or translator (a deficiency that defendants later sought to rectify with the filing of the motions for reconsideration), Nguyen's declarations nevertheless fail to proffer any admissible evidence to support his key assertion that the Ministry's investigation and proceedings *prevented him* from being able to contact his California counsel, communicate with his family, or even seek United States consular support. For example, Nguyen asserted in his declaration and supplemental declaration that upon issuance of the Ministry's exit suspension order in April 2019, he was subjected to prolonged, daily interrogations and physical beatings, leading to four separate hospital admissions, and had no means of communicating with counsel or his family. Nguyen stated even more broadly that during his detention ("[s]ince the time I was detained in

32

Vietnam"), he received no correspondence about the pending cases, had only monitored telephone access, was given a cell phone only to respond to interrogation orders, and could not use the cell phone to call overseas. Nguyen further asserted that even after the Ministry rescinded the exit suspension order in January 2021, agents continued to follow him and monitor any phone calls or communications, causing him to stay incommunicado and "secluded and behind locked doors for [nine] months" while he made a plan to escape.

These assertions are cast into doubt by other evidence in the record, including the statements of attorneys Steele and Park. For example, Park testified that he called Nguyen about Nguyen's declaration in support of defendants' July 2019 opposition to the request for order to attach, and Nguyen seemed to know about the motion and asked Park to sign the declaration for him. Despite Park's testimony that he had last spoken with Nguyen in July 2019, Nguyen's counsel did not notify the court or opposing counsel that Nguyen was unreachable. It was not until March 2020 that Steele filed his declaration in support of the "[n]otice of [u]navailability" stating that Nguyen's "ability to communicate with his counsel and family is severely restricted" and that he (Steele) had "not been able to communicate with my client *in any meaningful way in several weeks*." (Italics added.) The record also reflects, contrary to Nguyen's claims regarding continuous interrogations and no ability to communicate between April 2019 and January 2021, that Nguyen visited the United States Consulate on May 23, 2019, and made multiple public appearances, covered by local news media, at contract signing and groundbreaking ceremonies, including in October 2019, May 2020, June 2020, and July 2020. Nguyen had Vietnamese counsel during this period but inexplicably contends that he could only communicate with them about the Vietnamese case, despite having filed a petition in the Vietnamese civil case asserting the proper forum for the legal dispute was with the SSC matter filed in Santa Clara County.

33

This evidence, viewed in the light most favorable to plaintiffs and " ' "giving them the benefit of every reasonable inference" ' " (*Hudson*, *supra*, 68 Cal.App.5th at p. 661), undermines Nguyen's assertion that he could not communicate after April 2019 and supports an inference that Nguyen's counsel (Steele, presumably through Park) had some ability to communicate at least until " 'several weeks' " prior to his filing the notice of unavailability in March 2020. Moreover, Park's deposition testimony, which defendants contend corroborates Nguyen's claims, offers only general support for the fact that communication with Nguyen was extremely limited and ended as of July 2019. Park's testimony does *not* support an inference that the difficulty in reaching Nguyen was due to interference by Vietnamese authorities at Luong's behest (as Nguyen claims), any more than it supports an inference that Nguyen's own fears and hypervigilance caused him to cut off contact.[15] " ' "[W]hen the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal." ' " (*Hudson*, at p. 661.) Nguyen's unsubstantiated claim that he needed to sequester himself "off-the-grid" for nine months following the rescission of the exit suspension order, because he feared unspecified further charges by the Ministry and believed he was being followed and monitored, does not satisfactorily explain defendants' failure to respond to the various motions or defend themselves in the action. Defendants therefore have not carried their burden to demonstrate that extrinsic fraud or mistake unfairly cost him the opportunity to defend against the Vector action on the merits. (See *Rappleyea*, *supra*, 8 Cal.4th at p. 981.)

---

[15] Park's deposition testimony described his phone calls with Nguyen, which he testified ended with a call on July 14, 2019, to wish Nguyen happy birthday, at which time they spoke for "20 [] or 30 seconds, then it was cut off by a third party." Park "was just guessing" and "didn't know anything about" why the call was cut off, but testified that in the "six times, plus one or two" that he spoke with Nguyen between December 2018 and October 2021, Nguyen "was acting extremely weird, just out of this world" and would say things like " 'Don't call me. I'm being listened to' " and hang up.

Even assuming, arguendo, that this court were permitted to draw contrary inferences from the evidence and conclude that Nguyen had shown that outside forces wholly prevented him from communicating with his California counsel regarding the pending actions, it would not constitute a sufficient basis to reverse the denial of the set aside motion. The test adopted by the courts to evaluate a claim for equitable relief from judgment is based on a tripartite formula intended to balance the policy in favor of affording each party the opportunity to have its case decided on the merits with the need for finality of judgments. (*Rappleyea*, *supra*, 8 Cal.4th at p. 982; *Estate of Sanders*, *supra*, 40 Cal.3d at p. 614.) In addition to defendants' burden to " 'articulate a satisfactory excuse for not presenting a defense to the original action' " (*Rappleyea*, at p. 982), they must satisfy the elements of diligence and merit. (*Ibid*.)

Accepting solely for purposes of argument that defendants have alleged a meritorious defense to the complaint allegations,[16] defendants nevertheless fail to demonstrate diligence in their actions seeking to set aside the judgment and underlying orders in this case. Litigation in this action started with the filing of the initial complaint against Nguyen in September 2018, before he traveled to Vietnam, and continued through the entry of judgment in May 2021. Defendants assert that when Nguyen returned from Vietnam in October 2021, "he filed his motions." This ignores the fact that the exit suspension order preventing Nguyen from leaving Vietnam was rescinded in January 2021. Defendants fail to point to any credible explanation for Nguyen's failure to attempt any communication at that time with his counsel (who remained defendants' counsel of record until April 2021), nor for the additional five-month delay between

---

[16] Given the nature of the allegations and defendants' contentions regarding the potential overlap or relatedness of claims as between the three actions and based on the declaration of Nguyen's current counsel Rosen, we accept for purposes of this appeal that, if provided the opportunity, Nguyen would be able to present at least a colorable or nonfrivolous defense to the action. (See *Rappleyea*, *supra*, 8 Cal.4th at p. 983 [accepting that the defendants had shown merit based on their answer to the complaint and statement of the attorney who had informally aided them].)

Nguyen's return from Vietnam in October 2021 and defendants' filing of the set aside motion in March 2022. We conclude that Nguyen has not credibly demonstrated diligence in bringing the set aside motions until five months after his return from Vietnam and more than a year after the Ministry rescinded any orders preventing him from leaving Vietnam.

Nor do defendants address the failure of codefendants Quy and Thao to respond to Steele's attempts to communicate with them—described briefly in his motion for relief as counsel—throughout the course of the proceedings. Defendants did not submit declarations on behalf of Quy or Thao in support of the set aside motion, and the excerpted deposition testimony cited in the parties' moving and responsive papers similarly does not address Thao's and Quy's failure to defend themselves in the litigation or seek relief earlier. Defendants therefore have not demonstrated that Quy and/or Thao was diligent in seeking to set aside the judgment and prior orders. (*Manson*, *supra*, 176 Cal.App.4th at p. 49.)

Defendants also have not satisfied the element of diligence as it relates to prejudice. "Of the three items a defendant must show to win equitable relief from default, diligence is the most inextricably intertwined with prejudice." (*Rappleyea*, *supra*, 8 Cal.4th at pp. 983–984.) Defendants assert that plaintiffs are not prejudiced by the set aside motion "other than having to surrender a judgment they shouldn't have had in the first place." However, under *Rappleyea*, there is heightened prejudice when a defendant seeks equitable relief after judgment has been entered, since a court in that circumstance "would be reversing a judgment and divesting a plaintiff of a property right by granting equitable relief from default." (*Id*. at p. 984.)

Considering the scope and effect of the requested set aside motion, the prejudice to plaintiffs in this case is manifold. Defendants seek not only to undo the judgment against them, but the multitude of underlying orders in this action (as well as in the QTV and SSC actions), representing nearly three years of litigation. Defendants had counsel

throughout the period that these motions were being litigated. Their counsel did not at any point attempt to seek a stay of proceedings or relief from the summary adjudication and discovery sanction orders—even as of March 2020, when Steele filed the notice of unavailability. Under these circumstances, plaintiffs' continued prosecution of the Vector and other actions was not improper and resulted in discovery sanctions, terminating sanctions, a writ of attachment, and summary adjudication.

Defendants' characterization of the relief sought in the set aside motion as requiring only the surrender of a judgment that plaintiffs "shouldn't have had in the first place" grossly understates the prejudice that would result from vacating these orders and forcing the parties and trial court to effectively turn back the clock to the filing of the complaint. To the extent that, in considering the set aside motions, the trial court recognized a potential for unfairness in ascertaining damages due to Nguyen's allegation of conflicting claims and overlap between the cases, the court deferred that as an issue yet to be addressed, "maybe at trial."

We also reject defendants' argument that plaintiffs improperly delayed the hearing on the set aside motion by bringing ex parte motions to conduct discovery and depose attorneys Park and Steele. The scope of the extraordinary relief sought by defendants and the unconventional nature of defendants' extrinsic mistake or fraud claim justified discovery into Nguyen's unavailability and his former counsel's representations to the trial court. Moreover, defendants themselves rely extensively on the discovery undertaken by their opponents as purported corroboration for Nguyen's claims.

In sum, the record reflects that the trial court understood the applicable law and scope of its discretion. Substantial evidence in the record supports its factual findings. Based on those findings, it was reasonable for the trial court to determine that defendants have not justified the extraordinary relief sought in this case by demonstrating grounds for equitable relief based on extrinsic fraud or mistake. We therefore conclude the trial court did not abuse its discretion in denying the set aside motion.

37

### III.  DISPOSITION

The judgment is affirmed.  Respondents are entitled to their reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

                        Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Grover, J.

**H051452**
*Vector Fabrication, Inc. et al. v. Nguyen et al.*